## SMYTH v. SUPREME LODGE, K. P.

(Circuit Court of Appeals, Second Circuit. January 12, 1915.)

### No. 68.

1. INSURANCE ☞718—MUTUAL BENEFIT INSURANCE—CONSTITUTION AS PART OF CONTRACT.

A provision in an application for membership in a fraternal benefit society that the contract should be controlled by all the laws, rules, and regulations of the order then in force or thereafter enacted did not make a constitution adopted shortly prior to the contract a part of the contract, unless it had been promulgated and was called to the attention of applicants for insurance, or at least such applicants as asked to be shown the laws, rules, and regulations by which they were agreeing to be controlled.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1854; Dec. Dig. ☞718.]

2. INSURANCE ☞819—MUTUAL BENEFIT INSURANCE—CONSTITUTION AS PART OF CONTRACT—EVIDENCE.

In a suit to enjoin the cancellation of a benefit insurance certificate, evidence held to show that complainant was asked to contract and did contract on printed representations that a constitution, which provided that the assessments for a person of complainant's age were $3 a month, was the basis of the contract; and hence a later constitution, providing that the assessments were $3 a month unless otherwise provided by the Supreme Lodge, was not a part of the contract.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 2006, 2007; Dec. Dig. ☞819.]

3. INSURANCE ☞719—MUTUAL BENEFIT INSURANCE—CHANGE IN LAWS—AMOUNT OF ASSESSMENTS.

A provision of a benefit insurance contract that insured would be controlled by all the laws, rules, and regulations then in force or thereafter enacted did not authorize a change in assessments from $3 to $14.70 a month.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1855; Dec. Dig. ☞719.

Mutual benefit insurance contracts as affected by subsequent provisions and amendments of charter, constitution, or by-laws, see note to Supreme Council, A. L. H., v. Champe, 63 C. C. A. 285.]

Appeal from the District Court of the United States for the Northern District of New York.

This cause comes here on appeal from a decree of the District Court, Northern District of New York, holding that a certain policy of insurance issued by defendant to complainant was in full force and effect and enjoining defendant from canceling the policy. The opinion of the District Court will be found in 198 Fed. 967.

J. P. Goodrich, of Indianapolis, Ind., and J. J. McCall, of Albany, for appellant.

R. J. Sanson, of Amsterdam, for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The policy in question was issued November 8, 1889, for $3,000, complainant to pay assessment of $3 each month. It is that kind of policy under which the fund to pay death losses consists of the assessments on survivors of the insured's class and contains a provision that if at the time of death the proceeds of one assessment on all members of the class shall not be sufficient to pay the endowment stipulated for in full, then the amount paid shall be equal to the proceeds of one full assessment on all remaining members of the class, less 10 per cent. for expenses.

Complainant paid his monthly $3 assessments as they came due, until December, 1910, when defendant notified him that unless he surrendered his policy and accepted another containing different terms and agreements, and paid $14.70 per month, instead of $3, his policy would be canceled. This notification was based on a clause in complainant's application, which was made a part of the contract, providing that the "contract shall be controlled by all the laws, rules, and regulations of the order governing this Rank, now in force, or that may hereafter be enacted by the Supreme Lodge." The increase of assessment was provided for in amendments to the constitution and by-laws adopted some years after complainant's insurance was effected.

The facts are stated at great length and in minute detail by Judge Ray and need not be repeated here. In the constitution as it stood in 1886, article IV provided that each member of the Endowment Rank (insurance class) shall pay the assessment provided in a table included in the article ($3 for a person of complainant's then age) "each month thereafter as long as he remains a member of the Endowment Rank." It is contended that in 1888 the article was amended by adding after the passage quoted supra the words "unless otherwise provided for by the Supreme Lodge." The argument is that because the constitution, which was made a part of the contract, provided that another sum than $3 a month might be assessed on each member at the option of defendant, and because the assessment had been increased as above stated, complainant was bound to pay at the increased rate or forfeit his policy.

[1] The difficulty with this syllogism is found in its major premise. In the first place, the testimony offered to prove that the constitution was amended in 1888 is very unsatisfactory. The sole witness, examined in 1912, was at the time secretary of the defendant. In 1888 he was not secretary, and was 13 years old; he had no personal knowledge of its affairs at that time. The original constitution provided that the constitution might be "altered or amended at any regular session of the Supreme Lodge by a two-thirds vote." The witness was examined in Indianapolis, where the office of defendant was located. He stated that he had in his possession the original minutes, records, and journal, but no part of the minutes of the session June 12 to 23, 1888, at which

it was contended the old constitution was amended and the so-called "constitution of 1888" adopted, was put in evidence. The witness merely identified a pamphlet marked "Exhibit A" as being a true copy of the constitution of 1888, which *he* said was adopted by the Supreme Lodge at the June session of that year, "effective August 1, 1888," by a unanimous vote. But, waiving this objection, and assuming that the minutes showed what the witness said they contained, something more must be shown to make this particular constitution a part of the contract. It must appear that it was promulgated and was called to the attention of applicants for insurance, at least of such applicants as asked to be shown the "laws, rules, and regulations" which by their application they were agreeing to be controlled by. Which constitution was it, that of 1886 or of 1888, which was made a part of the contract with this complainant? By the one he was to pay $3 a month "as long as he remains a member"; by the other he was to pay assessment at that rate "unless otherwise provided by the Supreme Lodge."

[2] On this branch of the case the testimony is as follows: Complainant testified that at the time he applied and was accepted he was given a little pamphlet (Exhibit C) which contains the constitution of 1886; that it was given him by defendant's agent, who negotiated his application and gave him his certificate; that he had kept it in the same envelope with his certificate of membership, and he produced it. The agent testified that sometimes he handed out copies of the constitution, and sometimes he did not; some applicants asked for them, and some did not; that he could not now remember whether or not he gave complainant a copy; but that he was supplied from the home office with copies of the constitution, and when he did give applicants copies, he gave them out of the latest that he had. This made out a prima facie case, which was not contradicted, but, on the contrary, corroborated by other proof.

Complainant, at Amsterdam, N. Y., applied for insurance in October, 1889; he was furnished by the local secretary, or agent, of defendant with a form of application, which he filled up, signed and dated October 26, 1889. Upon this the home office issued its "certificate of insurance," dated Chicago, November 7, 1889, which was sent to Amsterdam and approved by complainant November 26, 1889. It is contended that the constitution of 1888, with its new provision giving power to increase rates, was adopted June 1, 1888, "effective August 1, 1888." That same constitution, however, prescribed several changes in the form of "certificate of insurance." Examination of the certificate issued by the Chicago office and given to Smyth shows that it was in the form prescribed by the constitution of 1886, without the amendments which the constitution of 1888 provided. If a year and more after the alleged adoption of the constitution the home office was still using the certificate forms of 1886 unchanged, it would not be surprising that its agents were still supplied only with copies of the constitution of that year. Certainly the chance of their getting new members would be greater if applicants supposed they were joining under a constitution which did not provide for an increase of rates.

In this connection it may be noted that complainant produced a cir-

cular D, which he testified he got at the time he made application. Defendant contends that such circular was not sent out until 1894; but it is a significant circumstance that the circular states that "payments do not increase with increasing age, but always remain the same." It seems quite unlikely that defendant would be making such representations in the circular, when at the same time it was handing out copies of a constitution which showed that the representation was untrue.

On the whole, we find nothing to overcome complainant's testimony that he was asked to contract, and did contract, on printed representations which advised him that the constitution of 1886 was the basis of this contract, and that therefore the "power to increase" referred to in constitution of 1888 was not a part of the contract entered into between defendant and himself.

[3] As to the effect on such a contract of the general provision that insured will be "controlled by all the laws, rules, and regulations, governing this rank, now in force, or that may hereafter be enacted by the Supreme Lodge," it is unnecessary to add to Judge Ray's exhaustive discussion of the authorities. In Ayres v. Ancient Order of Workmen, 188 N. Y. 280, 80 N. E. 1020, the court laid down the proposition that:

"While a 'mutual benefit fraternity,' or fraternal insurance society, may so amend its by-laws as to make reasonable changes in the methods of administration, the manner of conducting its business, and the like, no change can be made which will deprive a member of a substantial right conferred expressly or impliedly by the contract itself. That is beyond the power of the Legislature, as well as the association, for the obligation of every contract is protected from state interference by the federal Constitution."

In Judge Ray's conclusion on the facts of this case to the same effect we fully concur.

Decree affirmed, with costs.