# HANNA DESSAUER v. SUPREME TENT, KNIGHTS OF THE MACCABEES OF THE WORLD, Appellant.

### In Banc, April 7, 1919.

1. **LIFE INSURANCE: Validity of Subsequent Changes in Contract Made by By-Law.** The contract rights between the parties to a life insurance policy relating to the benefits the member is to receive under his assessment policy cannot be destroyed, impaired or taken away from him by a by-law subsequently enacted by the association, even though the application for the policy and the policy itself contain a provision that the member is to be bound by and must conform to all laws of the order then in force or that may thereafter be enacted by it. Such provisions relate to and mean only such by-laws or rules as may thereafter be enacted for the regulation and conduct of the affairs of the association and the duties of members, and have no reference to changes and alterations in the contract entered into with the member.

2. ———: ———: **Suicide.** Where the fraternal association promised to pay the member a named sum only on condition that "he shall have in every particular complied with the laws of the order now in force or that may hereafter be adopted," and one of the by-laws at the time the certificate was issued provided that in case the member committed suicide within five years after admission his bene-

ficiary was to be paid only the assessments paid, and thereafter the by-law was so changed as to prohibit the payment of any mortuary benefit in case of suicide at any time, except twice the assessments paid, the association was not relieved from paying the benefit promised, by the suicide of the member more than five years after his admission to membership. A contract to pay indemnity cannot be impaired by a subsequent change in the by-laws except by the member's express consent. [Overruling Dessauer v. Supreme Tent, 191 Mo. App. 76, and paragraph 2 of Claudy v. Royal League, 259 Mo. l. c. 105.]

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

AFFIRMED.

*R. P. & C. B. Williams* for appellant; *D. D. Aitken,* of counsel.

(1) There is no law or public policy prohibiting a member of a benefit society from contracting in advance that future laws may be passed by societies changing and modifying the indemnity in the original certificate, and if such stipulation is made, the by-law will be enforced. Claudy v. Royal League, 259 Mo. 92; Shipman v. Protected Home Circle, 174 N. Y. 398; Richmond v. Supreme Lodge, 100 Mo. App. 8; Morton v. Royal Tribe, 93 Mo. App. 78; Lewine v. Supreme Lodge, 122 Mo. App. 547; Westerman v. Supreme Lodge, 196 Mo. 738; Ellerbe v Faust, 119 Mo. 653. (2) The certificate application, and by-laws of a mutual benefit society constitute the contract with the member, and all must be read together in order to see all the terms and conditions of the contract. Westerman v. Supreme Lodge, 196 Mo. 738; Richmond v. Supreme Lodge, 100 Mo. App. 8; Slater v. Supreme Lodge, 76 Mo. App. 387; Laker v. Royal Union, 95 Mo. App. 353; Shipman v. Protected Home Circle, 174 N. Y. 398. (3) There is no vested interest in a benefit certificate issued by a fraternal beneficiary association, and therefore its subsequent by-

laws changing the contract or reducing its obligations does not disturb any vested rights. Westerman v. Supreme Lodge, 196 Mo. 1. c. 737; Masonic Benefit Association v. Bunch, 109 Mo. 560; Wells v. Mutual Benefit Association, 126 Mo. 630; Richmond v. Supreme Lodge, 100 Mo. App. 8; Morton v. Royal Tribe, 93 Mo. App. 78; Shipman v. Protected Home Circle, 174 N. Y. 368; Casualty Co. v. Kacer, 169 Mo. 314; Grand Lodge v. McFadden, 213 Mo. 284; Hofman v. Grand Lodge, 73 Mo. App. 47; Grand Lodge v. Reneau, 75 Mo. App. 402; 1 Bacon, Benefit Societies, sec. 291a; Golden Star Fraternity v. Martin, 59 N. J. L. 207; Ables v. Ackley, 133 Mo. App. 603. (4) Where the member either in the application or certificate, agrees to be bound by after-enacted by-laws or the obligation of the society to pay is made subject to or liable to forfeiture, if the member shall not comply with laws, rules and regulations that may be subsequently adopted, as well as those in force at the time he joined, such after-enacted by-laws are valid and binding. Claudy v. Royal League, 259 Mo. 92; Westerman v. Supreme Lodge, 196 Mo. 738; Ellerbe v. Faust, 119 Mo. 653; Shrick v. St. Louis Mut. Co., 34 Mo. 423; Allen v. Life Ins. Co., 8 Mo. App. 52; State ex rel. v. Grand Lodge, 70 Mo. App. 456; Richmond v. Supreme Lodge, 100 Mo. App. 8; Morton v. Royal Tribe, 93 Mo. App. 78. The following is a list of authorities by states passing on after-enacted suicide by-laws, as well as after-enacted by-laws on kindred subjects, wherein the same principle is involved, sustaining such by-laws: Supreme Commandery v. Ainsworth, 71 Ala. 436; Fraternal Union of America v. Zeigler, 145 Ala. 287; Stohr v. Musical Fund Society, 82 Cal. 557; Bowie v. Grand Lodge, 99 Cal. 392; Schmierer v. Mut. Reserve Fund Life Assn., 153 Cal. 208; Caldwell v. Grand Lodge, 148 Cal. 195; Brown v. Knights of the Protected Ark, 43 Colo. 289; Masonic Mut. Benefit Assn. v. Severson, 71 Conn. 719; Gilmore v. Knights of Columbus, 77 Conn. 58; Union Fraternal League of Boston v. Johnston, 124 Ga. 902; Supreme Tent, K. O. T. M. v.

Hammers, 81 Ill. App. 560; Supreme Lodge K. of P. v. Kutscher, 179 Ill. 340; Supreme Lodge, K. of P. v. Trebbe, 179 Ill. 348; Baldwin v. Begley, 185 Ill. 180; Theorell v. Supreme Court of Honor, 115 Ill. App. 313; Murphy v. Nowak, 223 Ill. 301; Scow v. Royal League, 223 Ill. 32; Royal Arcanum v. McKnight, 238 Ill. 349; Garrety v. Catholic Order of Foresters, 148 Ill. App. 189; Ross v. Brotherhood of America, 120 Iowa, 692; Norton v. Order of Foresters, 138 Iowa, 464; Ury v. M. W. A., 127 N. W. 665; K. O. T. M. v. Nelson, 77 Kan. 629; Daughtry v. K. of P., 49 La. Ann. (Part II) 1203; Mathieu v. Mathieu, 112 Md. 625; Paine v. Society, 172 Mass. 321; Borgards v. Ins. Co., 79 Mich. 440; Brinnen v. Supreme Council C. M. B. A., 140 Mich. 220; Monger v. New Era Assn., 156 Mich. 645; Brown v. K. O. T. M., 167 Mich. 123; Ledy v. National Council, 129 Minn. 137; Supreme Lodge v. Stein, 75 Miss. 106; Dornes v. Supreme Lodge K. of P., Miss. 466; Schrick v. Mutual Co., 34 Mo. 423; Richmond v. Supreme Lodge, 100 Mo. App. 8; Morton v. Royal Tribe, 100 Mo. App. 78; Westerman v. Supreme Lodge, 196 Mo. 739; Ellerbe v. Faust, 119 Mo. 653; Allen v. Life Assn., 8 Mo. App. 52; State ex rel. v. Grand Lodge, 70 Mo. App. 466; Claudy v. Royal League, 259 Mo. 92; Farmers' Mut. Ins. Co. v. Kinney, 64 Neb. 808, 90 N. W. 926; Briggs v. Royal Highlanders, 84 Neb. 834; Supreme Council v. Adams, 68 N. H. 236; State ex rel. v. Camden Lodge, 73 N. J. L. 500; Poultney v. Bachman, 31 Hun, 49; Hutchinson v. K. O. T. M., 68 Hun, 355; Shipman v. Protected Home Circle, 174 N. Y. 398, 63 L. R. A. 347; Green v. Ins. Co., 139 N. C. 309; Tisch v. Protected Home Circle, 72 Ohio St. 233; Chambers v. Supreme Tent, 200 Pa. 244; Supreme Lodge v. La Malta, 95 Tenn. 157, 30 L. R. A. 838; West v. Grand Lodge, 14 Tex. Civ. App. 471; Eversberg v. K. O. T. M., 33 Tex. Civ. App. 549; Fugure v. Mut. Soc., 46 Vt. 362; Plunkett v. Supreme Conclave, 105 Va. 643; Kline v. Knights & Ladies, 140 Pac. 72; Thomas v. Maccabees, 85 Wash. 665; Schmidt v. Supreme Tent, 97 Wis. 528; Hughes v. Wis. Odd Fellows,

98 Wis. 292; Loeffler v. Modern Woodmen, 100 Wis. 79; Curtis v. Modern Woodmen, 159 Wis. 303; Barrows v. Mut. Reserve Life Ins. Co., 151 Fed. 461; Order of U. C. T. v. Smith, 192 Fed. 102; Supreme Lodge v. Light, 195 Fed. 903; Wright v. Minn. Mut. Life Ins. Co., 193 U. S. 657; Supreme Lodge v. Minn., 240 U. S. 574; Holt v. Supreme Lodge, 235 Fed. 885.

*William S. Campbell* for respondent.

(1)  Subsequent by-laws undertaking to reduce the amount to be paid under certain contingencies, such as death by suicide, do not take effect on previous contracts, and stipulations in the application and certificate of insurance that the member will comply with future regulations, means the members will comply with such as relate to his duty as a member, but it does not mean that the association may interfere with the essential purpose of the contract, namely, the indemnity covenanted to be paid.   Zimmermann v. Supreme Tent, 122 Mo. App. 591; Mathews v. Modern Woodmen, 236 Mo. 349;   Dietrich v. Modern Woodmen, 161 Mo. App. 101; Morton v. Supreme Council, 100 Mo. App. 92; Smail v. Court of Honor, 136 Mo. App. 434; Kavanaugh v. Royal League, 158 Mo. App. 243; Lewine v. Supreme Lodge K. of P., 122 Mo. App. 547; Pearson v. Knights Templar, 114 Mo. App. 288;   Wilcox v. Court of Honor, 134 Mo. App. 547; Sisson v. Supreme Court of Honor, 104 Mo. App. 61; Young v. Railway Mail Assn., 126 Mo. App. 325; Campbell v. American Benefit Club, 100 Mo. App. 249; Smith v. Supreme Lodge K. of P., 83 Mo. App. 526; Grand Lodge v. Sater, 44 Mo. App. 453; Hysinger v. Supreme Lodge K. of P., 42 Mo. App. 635; Dowdall v. Catholic Mutual Benefit Assn., 196 New York 408; Weber v. Maccabees, 172 N. Y. 493; Beach v. Supreme Tent of Maccabees, 177 N. Y. 100; Evans v. Southern Tier Masonic Relief Assn., 182 N. Y. 453; Ayers v. Order of United Workmen, 188 N. Y. 280;   Olson v. Court of Honor, 100 Minn. 117; Ruder v. National Council, 124 Minn. 431;   Smyth v.

Supreme Lodge K. of P., 198 Fed. 989; Knights Templar & Masons Indemnity Co. v. Jarman, 44 C. C. A. 93, 104 Fed. 638; Parks v. Supreme Circle Brotherhood of America, 89 Atl. 1042; Newhall v. American Legion of Honor, 181 Mass. 117; Pokrefky v. Fireman's Fund Assn., 121 Mich. 456; Heptasophs v. Rehan, 119 Md. 92. (2) It has been repeatedly held that the provision in the application of the member to comply with future by-laws and regulations means the member will comply with such by-laws, rules and regulations as relate to his duties as a member of the association, and that the order is powerless, by by-laws or otherwise, to change or modify the essentials of the contract of insurance without the express consent of the member. Zimmermann v. Supreme Tent, 122 Mo. App. 591; Kavanaugh v. Royal League, 158 Mo. App. 243; Morton v. Supreme Council, 100 Mo. App. 92; Campbell v. American Benefit Club, 100 Mo. App. 249; Sisson v. Supreme Court of Honor, 104 Mo. App. 61.(3) An after enacted by-law which has the effect of materially changing the contract between the insured and the society, by greatly reducing the amount which his beneficiary would receive at his death, is an unreasonable change, and not biding upon the insured or his beneficiary. Kavanaugh v. Royal League, 158 Mo. App. 234; Lewine v. Supreme Lodge, 122 Mo. App. 547.

WOODSON, J.—The plaintiff brought this suit in the Circuit Court of the City of St. Louis against the defendant on a fraternal benefit policy to recover the sum of three thousand dollars alleged to be due her thereon. Judgment was rendered in the pleading in her favor for the sum sued for and interest.

In due time and in proper form the defendant appealed the cause of the St. Louis Court of Appeals, which reversed the judgment and directed the circuit court to render judgment for the plaintiff for $744, the amount tendered by the defendant before the suit was instituted. One of the judges of the Court of Appeals

dissented from the opinion therein rendered and the cause was duly certified to this court.

The policy is dated August 14, 1900, and the material parts thereof are as follows:

"This certifies that Sir Knight Emmanuel Dessauer has been regularly admitted as a member of Hall Tent No. 8, located at St. Louis, State of Missouri, and that in accordance with, and under the provisions of the laws of the order, he is entitled to all the rights, benefits and privileges of membership therein, and that at his death one assessment on the membership, not exceeding in amount the sum of three thousand dollars, will be paid as a benefit to Hannah Dessauer, bearing relation to him of wife, upon satisfactory proof of his death, together with the surrender of this certificate, provided he shall have in every particular complied with the laws of the order now in force, or that may hereafter be adopted, and has not obtained his membership by fraud or misrepresentation as to his age, family history, physical condition, or occupation, when admitted to membership, as shown by his application which is hereby made a part of this certificate."

At the time of the issue of the policy the following by-law of the company was in force:

"Section 173. No benefit shall be paid . . . when death was the result of suicide within five years after admission, whether the member taking his own life was sane or insane at the time, or when the death of the member was intentionally caused by the beneficiary or beneficiaries of such member; provided that in case of suicide within five years after admission, all assessments paid to the Supreme Tent by such member shall be paid back to the beneficiary named in the certificate and such amount shall be the full amount that can be claimed in any such case."

On July 20, 1904, about four years after the issuance of the policy, the following by-law was adopted

by the company and remained in force until after the death of the insured:

"No benefits shall be paid on account, of the death of a member who shall die by his own hand, whether sane or insane, provided, however, that the beneficiary named in life-benefit certificate, or the person legally entitled to the benefit, shall receive an amount equal to twice the amount contributed to the life benefit fund by the member during his lifetime."

The insured knew of this by-law and continued to pay his assessments and dues up, to the 19th day of January, 1911, when he took his own life by shooting himself in the head.

I. There is but a single legal proposition presented by this record for determination, and that is, whether or not the by-law adopted July 20, 1904, is controlling in this case. Counsel for defendant contends that it is, while those for the plaintiff deny that proposition and assert that the by-law of August 14, 1900, in force at the date of the issuance of the policy, controls.

In the light of the decisions of the courts of this State, this can no longer be considered an open question. They are unanimous in holding that the contract rights between the parties  regarding the benefits the member is to receive under the terms of the policy cannot be destroyed, impaired or taken away from him by a subsequently enacted by-law by the association, even though the application for the policy, and the policy itself, contain a provision to the effect that the member is to be bound by and must conform to all the laws then in force, as well as such as may thereafter be enacted by the association; the provisions regarding such subsequently enacted by-laws have been construed and must be construed to mean such by-laws and rules as may be thereafter enacted for the government and regulation of the conduct and management of the affairs of the association, and prescribing the duties of the members, and not

for the purpose of changing, or nullifying contracts entered into with its members. Among the cases so holding are the following:

In Smith v. Supreme Lodge, 83 Mo. App. 512, 1. c. 526, the court said: "The fact that it reserved the right by the assent of the member to make future by-laws obligatory upon him, could not justly be deemed to comprehend the right to abate its debt, for that would *pro tanto* destroy the contract between the parties and to permit one person to accept a consideration of a debt and subsequently to deny a material part or all of such debt, would authorize a patent fraud which the law does not deem to have been within the intent of a mere general agreement for changes in the contract."

In Morton v. Supreme Council, 100 Mo. App. 76, 1. c. 92, the court said: "Whatever the rule may be in other jurisdictions, in this one is that by-laws of the kind involved in this controversy do not materially alter or impair prior contracts of insurance, whatever the proviso of the certificate may be in regard to future by-laws, on the theory above stated, that the intention of such a provision is to bind the insured simply by administrative or regulative enactments; not such as go to the reduction or withdrawal of the consideration for which assessments are charged."

In the case of Campbell v. American Benefit Club, 100 Mo. App. 249, 1. c. 256, the court said: "Yet that the proper interpretation of the contract, and the true intent of the recital in the application, were to render obligatory upon the insured only after-adopted laws for the conduct of the order, duties of the members and the like, but not such as sought to impair or effect the existing contracts of insurance, in our judgment, is supported by the weight of authority and is controlling and herein approved."

In Sisson v. Supreme Court of Honor, 104 Mo. App. 54, 1. c. 61, the court, in discussing this question, said: "But do not mean that the society may inter-

278 Mo.—5

fere with the essential provisions of the contract of insurance, and that it is powerless, by by-laws or otherwise, to change or modify the essentials of the contract of insurance without the express consent of the member.''

So in the case of Pearson v. Life Indemnity Co., 114 Mo. App. 283, l. c. 290, the court, in discussing the question of the effect of a subsequently enacted by-law on previous contracts, said: ''I think it may be safely asserted that the doctrine of this court is that beneficiary associations doing an insurance business on the assessment plan are without authority to change or modify their contracts of insurance without the express assent of the members, and that this doctrine is supported by the great weight of authority elsewhere, as shown by the cases cited in the opinion of Morton v. Supreme Council, supra.'' In the case of Zimmermann v. Supreme Tent, K. O. T. M., 122 Mo. App. 591, l. c. 601, the identical question that is involved in this case was there presented, and the court, after reviewing the decisions to which we have referred above, said: ''This court, however, has been consistent in holding that the benefit contracted for cannot be destroyed or impaired by a subsequently enacted by-law, though the member agreed in advance that his contract should be governed by subsequently enacted by-laws, on the ground that a by-law which impairs the indemnity secured is unreasonable and could not have been in the mind of the member when he entered into the agreement. It seems most unreasonable that the member would agree in advance, that the very thing he was contracting for, to-wit, the benefit to accrue to his beneficiary, might be destroyed or impaired by the opposite party to the contract at any time in the future it might choose to do so, by passing a by-law.''

In the case of Lewine v. Supreme Lodge, 122 Mo. App. 547, l. c. 558, the court said: ''And so it has held that the contract to conform to and abide by, or submit to the penalties of future by-laws did not author-

Dessauer v. Maccabees.

ize the subsequent modification of the contract of insurance by an after-enacted law reducing the amount to be paid in event of suicide; that such was an unreasonable exercise of power reserved under the language quoted, and that to hold such subsequent law valid would be an unreasonable interpretation of the language employed in the contract.''

In the case of Young v. Railway Mail Assn., 126 Mo. App. 325, l. c. 333, the court said: ''But conceding, for the sake of argument, that plaintiff was bound to comply with the by-laws of defendant, it is well settled law in this State that such an agreement does not bind a member to comply with by-laws adopted after the issuance of his certificate of insurance, if the subsequent by-laws in any way impair his contract of insurance or impose upon him an additional burden.''

In the case of Wilcox v. Court of Honor, 134 Mo. App. 547, l. c. 557, the court said: ''The suicide by-law in force at the time the certificate was issued, entered into and formed a part of the contract of insurance, and we hold that the amended by-law on the subject of suicide did not in the least alter or change the contract in respect to suicide, and that the amendment was not intended to affect contracts of insurance then in force. Neither was the power reserved to the order, by the application or certificate, or the by-laws, to substitute at any time an amended by-law on the question of suicide, which would change in the least the provisions of the contract of insurance.''

In the case of Smail v. Court of Honor, 136 Mo. App. 434, l. c. 442, the court said: ''We think it would be most harsh and unreasonable to hold that the language employed in the certificate and application gave license to defendant to destroy or impair its obligation under the contract without the consent of the other party to that contract.''

In Kavanaugh v. Royal League, 158 Mo. App. 234, l. c. 243, upon this point the court after referring to the decisions of Illinois, which sustained after-enacted by-laws, said: ''Though such be the rule in that State,

the courts of Missouri decline to give effect to these
provisions in the contract as sufficient to authorize
the society to either reduce, impair or destroy the in-
demnity vouchsafed in the insurance certificate. In-
deed, the doctrine with us is that it is an unreason-
able interpretation or construction of such general
language contained in the application and certificate to
declare it sufficient to signify the intention upon the
part of the insured that the indemnity might be either
impaired or swept away by a future by-law on the
subject of suicide.''

In the case of Dieterich v. Modern Woodmen, 161
Mo. App. 97, l. c. 101, the court said: ''The associa-
tion, from the very nature of its organization, has the
inherent right to change its by-laws. In doing so,
however, it is subject to certain restrictions. The change
must be reasonable and in harmony with the general
purposes of the organization, and must not interfere
with the contract rights of its members.''

In the case of Mathews v. Modern Woodmen, 236
Mo. 326, l. c. 349, this court, in referring to the effect
of an after-enacted by-law on previous contracts, in an
opinion written by LAMM, J., said: ''If it impair
the substantive property rights of the member in his
insurance contract as that contract existed before its
passage, then, by the law of the land, it becomes in-
operative in so far as it impairs the obligation of a
contract previously entered into between the company
and Mathews. Such is the *rationale* of Schmidt v.
Supreme Lodge, 228 Mo. 675, supra. The question is
there so exhaustively considered that no new or further
exposition is necessary. Our conclusion is, in any view
of it, that said by-law should not control our disposi-
tion of this case.''

In Hysinger v. Supreme Lodge, 42 Mo. App. 627,
l. c. 635, where the question of an after-enacted by-law
regarding the question of beneficiaries was consider-
ed, the court said: ''Levin made a valid and binding
contract of insurance, which the defendant was not at

liberty to repudiate, so long as he paid his dues and assessments, and otherwise observed the rules and regulations of the order.''

In Grand Lodge v. Sater, 44 Mo. App. 445, l. c. 452, the question before the court was with reference to making the application a part of the contract by an after-enacted by-law, which was not a part of it at the time the certificate was issued. The court said: ''At the time Sater became a member there was no such law. Hence, we are of the opinion that the one subsequently adopted in no way affected Sater's contract with the order. As to other amendments to the constitution and by-laws, Sater was bound, but not so as to changes directly affecting his contract of insurance. An insurance contract, such as we have here, is as sacred as any other contract, and it cannot be modified or changed by the society, except by the express consent of the member.''

In the case of Knights Templar v. Jarman, 104 Fed. 638, affirmed in 187 U. S. 197, which was a case from the Western District of Missouri, the question of the effect of an after-enacted by-law with reference to suicide was being considered, and the court said, l. c. 644: ''In the second place, we observe that it is not a reasonable interpretation of the clause above quoted from the application that the applicant intended to assent in advance to any changes in its constitution and by-laws which the compay saw fit to make, even if they reduced the amount of indemity which the company had promised to pay in the event of his death, and thereby lessened the value of his policy. . . . It is not reasonable, however, to suppose that he intended to agree in advance that the company might, at any time, reduce the promised indemnity to any sum which it found convenient to pay.''

In the case of Smyth v. Supreme Lodge, 220 Fed. 438, affirming the same case in 198 Fed. 967, the court says: ''I think courts should and will hold that by-laws are made primarily for governmental purposes and the proper regulation and conduct and the man-

agement of the affairs of the corporation or association, and not for the purpose of either making contracts or unmaking or changing or impairing the obligation of contracts already existing.''

In Supreme Council, Legion of Honor v. Getz, 112 Fed. 119, the court said: ''These were to be binding upon Getz as upon all other members of the association, and, inasmuch as experience might show that for the accomplishment of these purposes changes in the by-laws might be expedient, it was provided that Getz should agree to such amendments as might seem to the members to be necessary to further these ends. To this extent, and no further, we think the agreement goes. The contract with the Supreme Council had not yet been made, and we cannot conceive that it was in the mind of either party that the defendant, by this agreement, should be free to abdicate any contract into which it might enter with the member, or that the benefits which he might seek to obtain could be swept away at the will of the defendant and without his consent.''

In the case of Iowa State Traveling Men's Association v. Ruge, 242 Fed. 762, a case from Missouri, decided in 1917, the question of an after-enacted by-law was before the court, and the court said, at page 768: ''The clause, however, was not a part of the constitution of the association nor any of its by-laws when the certificate in question was issued, and appears only in an amendment to one of the company's by-laws made some time after the issuance of the certificate. Admitting that by his application for membership in the defendant company, the insured agreed to such amendment of the by-laws, such an agreement at most would permit only an amendment germane to the original contract of the parties and would not authorize an amendment that would impair or substantially disturb vested contract rights.''

In the case of Ayers v. Order of United Workmen, 188 N. Y. 280, as to the effect of an after-enacted by-law, with reference to a member engaging in the liquor

business, the court said at page 286; "While the defendant may doubtless so amend its by-laws, for instance, as to make reasonable changes in the methods of administration, the manner of conducting its business and the like, no change can be made which will deprive a member of a substantial right conferred expressly or impliedly by the contract itself. That is beyond the power of the Legislature, as well as the association, for the obligation of every contract is protected from State interference by the Federal Constitution."

In the case of Weber v. Supreme Tent of Maccabees, 172 N. Y. l. c. 493, where a by-law of the defendant association similar to the one in question was discussed, the court said: "Unintentional self-destruction, whether due to uncertainty or accident, after the lapse of a year from the making of the contract, was as much insured against as death from typhoid fever or consumption, and an amendment to its by-laws providing that the death of an existing member from any of these causes should render the policy void would deprive the party of vested contract rights. An amendment which effects such a result, we have recently held, may not be made, because it is an unreasonable amendment destroying contract rights, instead of regulating the administration of the corporation and its membership within reasonable bounds."

In the case of Olson v. Modern Woodmen of America, 164 N. W. (Iowa) l. c. 348, upon the point of the effect of an after-enacted by-law, the court said, in referring to the effect of the assent upon the part of the assured to be bound by subsequent by-laws, that it only meant that the member assented to the making of such by-laws as were reasonable, and said: "It does not confer upon the society the power to destroy the contractual rights of a member, created by the certificate, or to unreasonably impair that obligation, or unreasonably reduce the indemnity which it has promised to pay, or unreasonably embarrass the assured's

beneficiary in reducing the amount stipulated to be paid in the certificate upon the happening of the event herein insured against. . . . It cannot be a reasonable interpretation of the reserved power to say that after the issuance of the certificate, the society, by virtue of the reserved power, was therefore permitted to make any amendments to its by-laws which in fact created a new and different contract than that entered into, or in a material way unreasonably changed the contract as to indemnity theretofore entered into, or one which rendered it impossible, under certain circumstances, for the beneficiary to recover on the certificate the amount stipulated in the certificate. Such interpretation would be unreasonable and such a by-law would be unreasonable so interpreted, since it would give to the society the power to make any by-law, even to the extent of destroying the contract which it had with the assured.''

In the case of Sheetz v. Protected Circle, 256 Pa. 176, an after-enacted by-law was being construed by the court. It was argued that as the member through his accredited representatives from the local body of which he was a member had participated in the enactment of the amendments to the constitution he was bound by those changes. The court said: ''This is unavailing, for the universally recognized rule is that, though a member of an association may know that certain amendments to the by-laws have been passed, and he may even have voted for them, it does not follow from this that he consents that they may have retroactive force, modifying the contract which he holds with the society.''

In Massachusetts in the case of Newhall v. American Legion of Honor, 181 Mass. 111, l. c. 117, the court said: ''To state our opinion in a different form, whatever compliances with by-laws may be construed to mean, it does not mean absolute submission to whatever may be enacted in good faith, and it does not extend to permitting a direct deduction from the sum which on the face of the certificate any ordinary man would be led to suppose secure.''

There is no conflict between the doctrine announced in the foregoing cases. and that stated in the case of Claudy .v. Royal League, 259 Mo. 92, and like cases. A most casual reading of the facts of that case will clearly distinguish it from the case at bar, and the rule of law underlying each is as different as are the facts of each. In my opinion the Claudy case was correctly decided, and I have no doubt but that the judgment of the circuit court in this case was proper.

I am, therefore, of the opinion that the opinion of the Court of Appeals in this case reported in the 191 Mo. App. 76, should be overruled, and it is so ordered.

For the reasons stated, the judgment of the circuit court is affirmed. *Bond, C. J.,* and *Walker, J.,* concur; *Graves, J.,* concurs in separate opinion, in which *Blair, Faris* and *Williams, JJ.,* concur.

GRAVES, J. (concurring.)—I concur fully in all that is said in the majority opinion, except the sentence which reads: "There is no conflict between the doctrine announced in the foregoing cases and that stated in Claudy v. Royal League, 259 Mo. 92, and like cases."

Paragraph two of the Claudy case, supra (259 Mo. l. c. 105), is in direct conflict with the general law of this State, and in direct conflict with the doctrine announced by my brother in this case. The effect of the ruling in the Claudy case is to permit these insurance companies to change the contract of insurance by a by-law passed after the issuance of the contract. All the courts of this State have set their face against this doctrine. The rule in other states is not material in view of our long fixed rule. That portion of the opinion in Claudy's case should be overruled. *Blair, Faris* and *Williams, JJ.,* concur in these views.