THOMAS A. CONSTABLE, Appellant, v. THE SU-
PREME TENT OF THE MACCABEES OF THE
WORLD, alias The Maccabees, Respondent.*

St. Louis Court of Appeals. Opinion filed April 6, 1926.

1. INSURANCE: Fraternal Benefit Societies: Assessment Rates: Power
to Adjust and Increase. A fraternal benefit society has the power
reasonably and equitably to readjust and increase its assessment
rates when this is neccessary for the society to maintain its sol-
vency and meet its benefit obligations, and thus fulfill the object and
purpose of its existence.

2. ———: ———: ———: Increased: Insured Cannot Recover Back
Assessments Where Increase Was Reasonable. Insured held not en-
titled to recover back from a fraternal benefit society all assess-
ments paid by him on the theory that the society had breached its
contract by increasing the asssessment rates, where the readjust-
ment and increase of assessment rates made by the society was
reasonable and equitable and necessary to meet its obligations, and
the amendment of its by-laws readjusting and increasing the rates
was duly and legally made by the society through its constituted
authority.

3. EVIDENCE: Fraternal Benefit Societies: Assessment Rates In-
creased: Presumption. The presumption will be indulged that re-
adjustment and increase of rates of a fraternal benefit society,
duly and legally made by the society through its constituted author-
ity, was equitable and necessary until the contrary is shown.

4. INSURANCE: General Insurance Law: Nonforfeiture Provisions:
Not Applicable to Fraternal Benefit Certificate. The nonforfeiture
provisions of the general insurance laws has no application to a
fraternal benefit certificate, though such certificate was issued be-
fore the society was authorized or licensed to do business in the
State.

*Corpus Juris-Cyc. References: Evidence, 22 CJ., p. 108, n. 98. Mutual
Benefit Insurance, 29 Cyc., p. 11, n. 19; p. 79, n. 68; p. 104, n. 98 New.

Appeal from   the Hannibal Court of Common Pleas.
.   —Hon. Charles T. Hays, Judge.

AFFIRMED.

*M. L. Farres* for appellant.

*John B. McIlwain* and *Rendlen & White* for respondent.

SUTTON, C.—The defendant is a fraternal benefit society. It was incorporated under the laws of Michigan in 1885. It has been doing business in Missouri as a fraternal benefit society since 1892. Upon the passage of the act relating to fraternal benefit societies by the Legislature of this State in 1897, the defendant complied with the provisions of that act and has ever since been annually authorized by the insurance department to do business in this State as a fraternal benefit society. The defendant's business is carried on in accordance with by-laws adopted by its law-making body called the Supreme Tent, which is made up of representatives from the membership. It is organized and its business is carried on solely for the benefit of its members and their beneficiaries, and not for profit. It has a lodge system with ritualistic form of work and a representative form of government, and makes provision for the payment of benefits in case of death, or total and permanent disability, or upon attaining the age of seventy years. The by-laws authorized the issuing of benefit certificates to the members and fixed the rates of assessments to be paid by the members according to the age of the member and the amount of the benefit carried. The society has no funds except such as are derived from the members by means of assessments. On June 27, 1892, the defendant issued to plaintiff a benefit certificate, designated in the laws of the defendant as an endowment certificate, as follows:

"This certifies that Sir Knight Thomas Abdel Constable has been regularly admitted in and is recognized as a member in good standing of 'Eureka Tent, No. 1, located at Hannibal, and that in accordance with and

under the provisions of the laws governing the order, his legal beneficiary named herein, is entitled to receive one assessment on the membership, but not exceeding in amount the sum of two thousand dollars, and the said sum will be paid as a benefit to Ida M. Constable, his wife, upon satisfactory proof of his death together with the surrender of this certificate, provided he shall have, in every particular, complied with the laws, rules and regulations of the order governing members and their beneficiaries, which are now in force, or may hereafter be adopted by the Supreme Tent, or the subordinate tent to which he belongs and has not obtained his membership by fraud or misrepresentation as to his age, physical condition, or occupation when admitted to membership. In case of permanent and total disability, or upon attaining the age of seventy years, he will be entitled to receive such part of said endowment as provided in the laws of the order which are now in force, or which may hereafter be adopted by the Supreme Tent.''

The application of plaintiff upon which this benefit certificate was issued is as follows:

''I hereby agree that these statements in this application and the laws of the Supreme Tent, Knights of the Maccabees of the World, now in force or that may hereafter be adopted shall form the basis of this contract for endowment and that any neglect to pay any assessment which shall be made by the Supreme Tent, within the time provided by the laws thereof or neglect to pay the dues fixed by the said laws, in the manner and at the time provided by said laws, or by the laws of the Tent to which I may belong shall vitiate my benefit certificate and forfeit all payments made. This application and the laws of the Supreme Tent now in force or that may hereafter be adopted are made a part of the contract between myself and the Supreme Tent, and I, for myself and my beneficiaries, agree to conform to and be governed thereby.''

The articles of incorporation of 1885 provide, *inter alia*, as follows:

"The Supreme Tent of the Knights of the Maccabees of the World is the Supreme Body of, and possessing sole jurisdiction, control and direction over the Order known as the Knights of the Maccabees, and is organized, established and working under a constitution and by-laws heretofore adopted by said Supreme Body, and its objects and the objects of said corporation are:

"To establish a benefit fund or funds from which, on satisfactory evidence of the death or disability of a member who has complied with all its lawful requirements, the sum of two thousand dollars in case of death shall be paid to his family, orphans, dependents or legal heirs as such member may direct, and in the case of total or permanent disability, such sum as may be designated in the endowment laws of said corporation.

"The endowment fund shall be created by an assessment made upon the members of said corporation in accordance with the provisions of the constitution and endowment laws of the association and shall be used only for the payment of death and disability losses."

Section 8 of the by-laws of 1891 provides that the association shall have the power:

"To establish a benefit fund or funds from which on satisfactory evidence of the death of an endowment member of the Order, who has complied with all its lawful requirements, a sum not exceeding three thousand dollars shall be paid to the beneficiary of such member, as he shall direct and as the laws of the Order shall provide, and upon the total and permanent disability of an endowment member, or upon such a member reaching seventy years of age, who may be in good financial standing with the Order at the time of the incurrence of a total and permanent disability, or reaching seventy years, such sum of money and in such manner as may be fixed in the laws of the Order."

Section 112 provides that the association has power to make its own laws, rules, and regulations for the government of the whole order, and has the right and

power of regulating and controlling its endowment fund and fixing the rate of assessments on the members.

Section 241 provides that the laws shall not be altered or amended except by a two-thirds vote of the members present at a regular review of the Supreme Tent, or at a special review called for that purpose.

Section 198 provides as follows:

"Any member holding a certificate of endowment who shall become totally and permanently disabled from any cause, not the result of his own illegal act, to perform or direct any kind of labor or business, or who shall arrive at the age of seventy years, and who has paid all legal dues and assessments since the date of his initiation to the date of such disability or period in life, shall be entitled to receive from the endowment fund, annually, one-tenth part of the sum for which his endowment certificate is issued. Provided, however, that the aggregate on such installments received by him shall in no case exceed the sum specified in such certificate; and provided, further, that any holder of an endowment certificate, claiming the benefit of this section on the ground of disability shall submit to the Supreme Medical Examiner such claim, accompanied by the affidavit of at least two reputable physicians, showing such disability to be total and permanent . . . On the death of such certificate holder, the amount payable on such endowment certificate shall be paid to the person or persons legally entitled thereto, less any amounts which may have been paid to the holder of such certificate under the provisions of this section."

The articles of incorporation as amended in 1904 provide, *inter alia,* as follows:

"This association shall have power to make laws, rules and regulations for its government. It shall have power to change, modify and amend its laws, and such laws as enacted, modified and amended shall govern and shall be binding upon all persons who are members of the Association at the time such amendments are made, as well as those persons thereafter admitted. It shall

have the power to establish a fund or funds for the payment of death, total and permanent disability, sick, funeral and accident benefits, and for the payment of the management expenses of the association, and for such other purposes as shall be necessary and proper to carry into execution the objects of the association, which funds shall be derived from monthly rates, additional assessments, dues, other payments collected from its members and subordinate bodies, and all accretions of such funds, as the laws of the Association shall provide. It shall have power to regulate and fix the monthly rates on members, to levy additional assessments, and to collect from its members such monthly rates, additional assessments, and such other amounts in such manner and for such purposes as it shall in its laws provide. It shall have power to change and amend its laws governing the monthly rates on members and its life benefit, sick, funeral and accident benefit certificates, and all such certificates issued by the association shall be subject to such modification as to terms, conditions of payment, and contingencies in which the same are payable, as the laws of the association shall from time to time provide.

The by-laws of 1904 provide, *inter alia,* as follows:

"Every member of the Association and every person deriving benefits or other legal rights from such member shall be bound by the laws in force at the time such member was admitted to the Association and by all amendments thereto which may thereafter be made, and all certificates issued by the Association shall be subject to such modifications as to terms, conditions of payment, and contingencies in which the same are payable as the laws of the Association may from time to time provide.

"All amendments to the laws of the Association shall govern and be binding upon those persons who are members of the Association at the time of the adoption of such amendments, as well as those persons subsequently admitted."

At the time the certificate was issued the by-laws did not prescribe any annual or monthly assessment upon the members, but assessments were called as needed to pay current claims. Assessments were fixed according to the age of the member. Plaintiff being thirty-three years of age his rate was fifty cents an assessment on the $1,000, or $1 on his $2,000 certificate, which he paid.

In 1901 the by-laws were regularly amended so as to provide for a monthly assessment and increasing the rate of assessment, the present members being allowed, however, to take the rate at their age at date of admission to the society. Provision was also made for additional assessments as required. Under these by-laws plaintiff took a rate as of thirty-three years of age, the date of admission, which was 80 cents a month on $1,000, or $1.60 on his $2,000 certificate. Plaintiff thereafter paid the monthly rate of $1.60. In 1904, by amendment of the by-laws, a general re-adjustment of the membership on a more adequate table of rates was attempted, which provided options to which the old members might transfer, and also provided that in case the members did not transfer to the higher rate they might continue the payment of their then present rate until they reached the age of fifty-five years when their rate would be $3 a month on the $1,000, or in plaintiff's case $6 on his $2,000 certificate. Provision was also made for additional assessments as required.

Plaintiff did not elect to re-rate under the new table of rates of 1904, but continued to pay the old rate of $1.60 a month until he reached the age of fifty-five years, which was in 1915, and then he commenced paying the rate of $3 a month on $1,000, or $6 a month on his $2,000 certificate, provided for in the amendments of 1904, and which he continued thereafter to pay until October 1, 1923.

In 1919, finding the table of monthly rates wholly inadequate to mature the promised benefits to its members, the by-laws were regularly amended by the supreme governing and law-making body providing an adequate

table of rates for all new members thereafter admitted, the old members continuing to pay their inadequate rate.

In 1922, a general re-adjustment of the entire membership became necessary. Some members were paying adequate rates, others only partial adequate rates, while others were paying grossly inadequate rates. The inadequate rate members were using up the funds contributed by the adequate rate members admitted since 1919. The undisputed testimony shows the decrease in the solvency of the society from 1914 to 1922, as follows: December 31, 1914, 92.22 per cent solvent; December 31, 1915, 91.70 per cent solvent; December 31, 1916, 90.77 per cent solvent; December 31, 1917, 89.31 per cent solvent; December 31, 1918, 87.91 per cent solvent; December 31, 1919, 83.84 per cent solvent; December 31, 1920, 73 per cent solvent; December 31, 1921, 69.32 per cent solvent; and December 31, 1922, 63 per cent solvent.

The by-laws were then regularly amended, re-adjusting the rates on the entire membership and placing all members on the same table of rates upon which new members had been admitted since 1919. All members were re-rated at their attained ages allowing them credit for their proportionate share of the funds on hand. The undisputed evidence shows this table of rates was equitable and necessary to enable the society to carry out its obligations with the members.

Various options were given to the old members to which they might transfer, and the by-laws provided that as to all members who did not transfer to any of the options prior to October 1, 1923, their monthly assessments commencing with October, 1923, would be in accordance with the amended by-laws of 1922.

Plaintiff had then become sixty-five years of age. He had not been paying more than the current cost of of his protection. He had accumulated practically nothing to the credit of his certificate. The monthly rate for all members sixty-five years of age was $12.60 on the $1,000 and on plaintiff's $2,000 certificate his monthly

rate was $25.20. This carried with it a total and permanent disability benefit and an old age benefit on reaching seventy years of age, the certificate maturing upon the happening of either of these events.

In the apportionment of the funds on hand he was given a credit of $2.30 a month to be credited on his monthly rate which reduced it to $22.90 on the $2,000. He would have been entitled to the same credit had he reduced his certificate to $1,000, in which case his monthly contribution would only have been $10.30.

Plaintiff refused to pay the increased amount for the month of October, 1923, and on November 1, 1923, he stood suspended, under the laws, from all rights and benefits of the society. The by-laws of the society have always provided that if a member fails to pay an assessment during the month in which it is due and payable, he stands suspended from all rights and benefits of the society, subject only to his right to become re-instated within the time and on the conditions provided in the by-laws.

Plaintiff brings this suit to recover back all assessments paid by him on the theory that the society had breached its contract by increasing the assessment rates in 1922

The answer of defendant is in substance, that defendant had, at all times, the reserved power to amend the by-laws increasing the rate of assessment and make it binding upon the whole membership, and that the by-laws of 1922 were regularly and legally amended increasing the monthly rates of assessments, and were no higher than absolutely necessary to enable defendant to carry out its contracts with its members.

The cause was tried to the court, a jury being waived. The court rendered judgment against the plaintiff and in favor of the defendant. No written opinion was filed, but it is said that the court, in announcing judgment, orally stated that the society, under its contract with plaintiff, had the reserved power to amend the by-laws

increasing the rates on members; that it was admitted by stipulation that the by-laws of 1922 were regularly and legally amended; and that under the undisputed evidence the amount of increase was reasonable and necessary to enable the society to carry out its obligations with its members.

Plaintiff appeals.

Plaintiff contends that the amended by-laws of 1922 increasing his monthly rate of assessment constituted a breach of his contract entitling him to sue and recover back all moneys paid by him to the society, and that the court below erred in ruling to the contrary.

The power of a fraternal benefit society to destroy, impair, or reduce, by a subsequently enacted by-law, the benefit promised or contracted for, is denied by the courts in this State and elsewhere. [Dessauer v. Supreme Tent Knights of the Maccabees, 278 Mo. 57, 210 S. W. 896, and cases there cited.] But the power of such a society to reasonably and equitably re-adjust and increase its assessment rates when this is necessary for the society to maintain its solvency and meet its benefit obligations, and thus fulfill the object and purpose of its existence, is universally recognized. [Supreme Lodge Knights of Pythias v. Mims, 241 U. S. 574, l. c. 579; Thomas v. Knights of the Maccabees, 85 Wash. 665, 149 Pac. 7; Hollingsworth v. Supreme Council of the Royal Arcanum, 175 N. C. 615; Messer v. Grand Lodge United Workmen, 180 Mass. 321; Wineland v. Maccabees of the World, 148 Mich. 608; Williams v. Supreme Council of the Catholic Mutual Benefit Ass'n, 152 Mich. 1; De Graw v. Supreme Court, I. O. F., 182 Mich. 366; Ebert v. Mutual Reserve Fund Life Ass'n., 81 Minn. 116; Fullenwider v. Supreme Council of the Royal League, 180 Ill. 621; Supreme Ruling of Fraternal Mystic Circle v. Ericson (Tex. Civ. App.), 131 S. W. 92; Case v. Supreme Tribe of Ben Hur, 106 Nebr. 220; Funk v. Stevens, 102 Nebr. 681; Wright v. Minnesota Mutual Life Ins. Co., 193 U. S. 657, l. c. 665; Reynolds v. Supreme Council of

the Royal Arcanum, 192 Mass. 150; Supreme Lodge Knights of Pythias v. Smyth, 245 U. S. 594; Supreme Lodge Knights of Pythias v. Knight, 117 Ind. 489; Garretson v. Woodmen of the World, 210 Mo. App. 539, l. c. 546, 243 S. W. 257; Westerman v. Supreme Lodge Knights of Pythias, 196 Mo. 670, l. c. 720, 94 S. W. 470.]

The evidence on behalf of defendant shows that the re-adjustment and increase of the assessment rates made by defendant was reasonable and equitable, and necessary to meet its obligations, and this is not controverted by any evidence in the case. Besides, it was admitted at the trial that the amendment of the by-laws re-adjusting and increasing the rates was duly and legally made by the society through its constituted authority, and the presumption will be indulged that such re-adjustment and increase of the rates was equitable and necessary until the contrary is shown. [Supreme Ruling of Fraternal Mystic Circle v. Ericson (Tex. Civ. App.), 131 S. W. 92, l. c. 95; Case v. Supreme Tribe of Ben Hur, 106 Nebr. 220, l. c. 225.] Furthermore, plaintiff does not contend, so far as we are able to gather from his brief, that the re-adjustment and increase of the rates was not equitable and necessary, but his contention is simply that the defendant was without the reserved power to increase the rates at all. The contention is in the teeth of practically all the authorities.

Plaintiff contends, however, that the fraternal benefit statute of Missouri, exempting fraternal benefit societies from the provisions of the general insurance laws of the State, does not apply in this case, for the reason that plaintiff's certificate was issued before defendant was authorized or licensed to do business in this state, and comes within the nonforfeiture provisions of the general insurance laws. This contention is untenable. It has been expressly decided by our Supreme Court that the non-forfeiture statute has no application to an insurance contract such as is involved in this case. [Westerman v. Supreme Lodge Knights of Pythias, 196

Mo. 670, 1. c. 729, 94 S. W. 470; Schmidt v. Supreme Court United Order of Foresters, 228 Mo. 675, 1. c. 708, 128 S. W. 653.] This was decided upon the theory that the contract itself was such that inherently the statute was not, and could not be made, applicable, and that the statute was intended to apply, and could be made to apply, only to ordinary life insurance contracts issued upon fixed and unalterable level premium payments.

Besides, the plaintiff did not plead or present his case in the court below upon the theory that he was entitled to extended or paid-up insurance, but upon the theory that the defendant had breached its contract by raising his assessment rate, and that he was entitled to maintain his insurance in force by the payment of the old rate of $6 per month as provided by the by-laws of 1904.

The Commissioner recommends that the judgment of the court of common pleas be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the court of common pleas is accordingly affirmed. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.

## ON MOTION FOR REHEARING.

SUTTON, C.—Plaintiff's counsel, on motion for rehearing, insists that the opinion misconceives his contention in this case, and he restates his contention substantially as follows: That at the time of the making of the contract out of which this action arose, the defendant was a fraternal society making contracts of insurance with citizens of Missouri when it had no license or authority to do business in Missouri, and that the defendant has no right as a foreign fraternal society to claim any exemption from the general insurance laws of this State as against this action; that the contract, having been entered into at a time when the defendant had no license or authority to do business in Missouri, is an

old line insurance contract, not subject to change or alteration by what defendant may do after the making of the contract; and that plaintiff never brought this action on any notion that such an action as this could be maintained against a fraternal society that had complied with the Missouri laws and had a license to do business in this State when the contract was made.

In support of this contention plaintiff cites and relies on the following cases: Kern v. Supreme Council, American Legion of Honor, 167 Mo. 471, 67 S. W. 252; Schmidt v. Supreme Court United Order of Foresters, 228 Mo. 675, 129 S. W. 653; State ex rel. National Council of Knights and Ladies of Security v. Allen (Mo.), 269 S. W. 388; Ordelheide v. Modern Brotherhood of America, 268 Mo. 339, 187 S. W. 1193; Brasfield v. Modern Woodmen of America, 88 Mo. App. 208; Brassfield v. Knights of the Maccabees, 92 Mo. App. 102; Huff v. Sovereign Camp Woodmen of the World, 85 Mo. App. 96; Harris v. Switchmen's Union of North America (Mo. App.), 237 S. W. 155; O'Neal v. Grand Lodge, Brotherhood of Railroad Trainmen (Mo. App.), 261 S. W. 128. In all these cases defenses were made upon false representations, or the suicide of the insured, and it was held that the fraternal defendants, not being licensed or authorized to do business in this State, were not exempt from the provisions of the general insurance laws disallowing such defenses. It is shown in the opinion that the non-forfeiture provisions of the general insurance laws can have no application to the insurance contract involved here, and that plaintiff did not plead or present his case in the court below on the theory that these provisions were applicable. Plaintiff's counsel apparently concedes this, but he has not pointed out any other provision of the general insurance laws affecting the insurance contract, from which the defendant claims exemption, or must claim exemption, under the provisions of the fraternal statute, to allow it to exercise its inherent reserved power to alter and re-adjust its assessment rates. It is manifest that the cases cited and

relied on by the plaintiff's counsel afford no support for his contention in this case.

The Commissioner recommends that the motion for rehearing be overruled.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The motion for rehearing is accordingly overruled. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.