MADISON M. JACKSON, APPELLANT, v. THE SECURITY BENEFIT ASSOCIATION, RESPONDENT.—139 S. W. (2d) 1014.

Kansas City Court of Appeals. January 29, 1940.

Rehearing denied April 29, 1940.

*A. W. Fulton, Harry L. Ladbury* and *Edward E. Naber* for respondent.

*D. C. Chastain, Gardner Smith* and *L. J. Bishop* for appellant.

KEMP, J.—This is an appeal from the order of the Circuit Court of Bates County, sustaining defendant's motion for new trial after a directed verdict for plaintiff on both counts of his petition.

The plaintiff (appellant here) is the assured under a certificate of insurance, the original of which was issued January 5, 1904, by the defendant (respondent), a fraternal benefit association, originally operating under the name of The National Council of the Knights and Ladies of Security. In 1919, its name was changed to The Security Benefit Association.

The first count of plaintiff's second amended petition, on which the case was tried, alleges the issuance of an original certificate of insurance for $1000, January 5, 1904, and that, in substitution for said certificate and upon plaintiff's application therefor, a new certificate was issued by defendant to plaintiff on the 29th day of July, 1916, identical in form with the original certificate except for the change of beneficiary. The petition further alleges that under Section 77 of the by-laws, which, under the terms of said certificate, was made a part thereof, any beneficiary member maintaining in full force his certificate until he should become seventy years of age and physically disabled was entitled, on proof of such disability, to receive ten per cent of his certificate annually during the continuance of the disability, subject to certain deductions therein set out, which are not here material.

It further alleges that the plaintiff was, on July 24, 1935, and at the time of the institution of the action, eighty-four years of age; that, as provided by said Section 77, he held his certificate valid until he reached the age of seventy years, and that thereafter, and since 1929, he has been physically disabled; and that he had performed all of the conditions imposed upon him by the certificate. These allegations are followed by a prayer for disability benefits of $100 per year from 1929 to 1935, both inclusive, in the amount of $600.

In the second count, plaintiff seeks the recovery of alleged excessive assessments paid by him to defendant on his certificate, and charges that when the certificate was issued in 1904, the assessment rate which his contract required him to pay was $2.30 per month; that, thereafter, at various times, the defendant unlawfully increased the assessments he was required to pay; that from 1904 to 1935, the plaintiff paid all the assessments maturing under his certificate, including the assessments so unlawfully increased over a period from 1919 to 1935; that the amount of the assessments he thus paid from 1919 to 1935, in excess of the amount that was actually due from him under the terms of the contract of insurance, was $249.15, for which amount he prays judgment. There is no dispute in the record that such sum represents the aggregate amount of such excess payments.

Defendant's answer to the first count of plaintiff's petition, after pleading a general denial, admits the issuance of said certificate and the then existence of Section 77 of the by-laws, and pleads various affirmative defenses. It sets up certain provisions of the plaintiff's application by which he agreed to abide by all the laws of the associa-

tion then existing or which might thereafter be enacted, and pleads certain of the by-laws of the association tending to show the authority to increase assessments, and pleads certain facts tending to show the necessity for such increase. Other defenses interposed are that, from time to time, and beginning in 1919, the defendant by its lawful action increased the amount of assessments which members were required to pay for mortality benefits, and that the same were paid by the plaintiff up to April 1, 1935; that said increases were necessary and reasonable, and that the plaintiff acquiesced in and recognized the right and power of the defendant to make said increases pursuant to its laws and the necessity therefor, by adopting such changes and complying therewith, by the payment of such increased death benefit assessments from the time of the adoption of each of said increased assessments, to and including March, 1935, and that the plaintiff is now estopped by his conduct and course of dealing to challenge or question the right of the defendant to make such increases of assessments, to question the necessity therefor, or the reasonableness thereof; that, effective January 1, 1920, it amended its by-laws whereby members were not ntitled to the old age disability benefits unless they paid additional assessments therefor, and made an additional levy of $9.50 per month for said old age disability benefits, and that plaintiff failed to pay said additional levy, by reason whereof he was not entitled to any such benefits.

The answer further pleads:

"That plaintiff has never made demand for the benefits claimed in this action or proof of any disability to this defendant Association prior to January, 1935, and this defendant had no notice of the alleged disability claimed by plaintiff, and pursuant to its by-laws, rules and regulations the plaintiff could not and is not entitled to have and recover from this defendant any alleged disability benefits to January, 1935, . . . and that plaintiff by his conduct in not making claim to the defendant for said alleged disability benefits, if any, within the time prescribed by defendant's laws and within a reasonable time has waived any and all rights which he may have to the alleged disability benefits, if any, and is now estopped to claim the same."

The answer to the second count consists of a general denial and the incorporation by reference of certain paragraphs set out in its answer to the first count.

The reply, after denying generally the allegation of the answer, specifically pleads that the action of the defendant association, in making such increases of assessments, was unreasonable, discriminatory, arbitrary and unlawful, and that such assessments were made with the deliberate purpose of causing certificates of the character of plaintiff's to lapse and thereby escape liability thereon; that no provision of the constitution and by-laws of defendant association re-

ferred to in defendant's answer or any other section of the constitutional laws authorized defendant, or any of its officers or committees, to require plaintiff to pay the sum of $9.50 per month, beginning January 1, 1920, with the privilege of obtaining old age disability benefits and ''that if said alleged rate was promulgated by the defendant association, it was never legally authorized or adopted by it.''

Upon the trial of the case, plaintiff introduced in evidence the original certificate issued to him in 1904, and offered testimony showing that upon his request for a change of beneficiary named in the certificate, a new certificate with the beneficiary changed therein, in the same form and containing the same provisions, was issued to him on July 29, 1916, in lieu of the original. Plaintiff further introduced in evidence Section 77 of defendant's by-laws, wherein was the provision for the payment of disability benefits, and introduced in evidence records of the defendant (as verified by an agent of defendant association), with respect to payments of assessments made by plaintiff on this policy, which records disclosed that plaintiff had paid the assessments demanded by defendant on his certificate from 1904 to March, 1935, in the aggregate amount of $1,111.65. From this it appears by mathematical calculation that the amounts so paid by plaintiff was $249.15 in excess of the aggregate amount due under said certificate, on the basis of the rate of $2.30 per month as in said certificate provided; that plaintiff, at the time of the trial, would be eighty-five years of age the 24th day of next month (July), and had been physically disabled since 1929—for the previous ''eight or ten years;'' (the date of the trial was June 3, 1936); that on November 12, 1935, plaintiff's attorney had written a letter on his behalf to the defendant, advising defendant that plaintiff was then eighty-four years of age; that he had been disabled for the past six years, and that the plaintiff would furnish evidence of such disability and would execute any proof of claim that defendant might desire, and insisted upon payment under the disability provisions of the policy. The letter indicates that previous reference to this claim had been made to defendant but is entirely indefinite as to its terms or the time when made. This is unimportant, however, as the portion of defendant's answer hereinabove set out admits, by clear inference at least, that plaintiff gave notice of disability and made demand of payment therefor in January, 1935. It was further shown that no request was made for further proof of age and disability.

The defendant demurred to the plaintiff's evidence on each count. Upon the overruling of each of the demurrers by the court, the defendant offered no evidence, electing to stand on its demurrers, whereupon the court, at plaintiff's request, instructed the jury to find for the plaintiff on each count of the petition. The jury, accord-

ingly, rendered a verdict for plaintiff upon both counts and judgment followed accordingly.

Defendant's motion for a new trial was sustained by the court as to the first count, on the ground that he failed to offer evidence sufficient to establish a *prima facie* case entitling him to recover, and as to the second count on the ground that defendant's demurrer to the evidence should have been sustained.

### Opinion.

### On Motion to Dismiss Appeal.

Before passing to a discussion of the merits of this appeal, we must pass upon defendant's motion to dismiss the appeal, based upon the contention that plaintiff's statement of the case in his brief does not comply with Section 1060, Revised Statutes of Missouri, 1929, and Rules 16 and 17 of this court.

It is pointed out that the statement does not show in what court the action was instituted, the date thereof, the issuance of summons or the service thereof, the date of the filing of the second amended petition upon which the case was tried, the date of the filing of defendant's answer, the date of the filing of the reply thereto, the date of trial or the term of court thereof, the date of and term of court in which the motion for new trial was filed, the date of and term of court at which said motion for new trial was sustained, the date on which the application and affidavit for appeal were filed or the term thereof.

Plaintiff's abstract and brief are under one cover. The cover page, as well as pages one and two of the abstract, states that the case arose in the Circuit Court of Bates County. The first pages of the record set out the pleadings, judgment and motion for new trial. The court's action in sustaining the motion is shown in the abstract. The abstract shows the rendition of the judgment, the date the motion for new trial was filed, the date the court sustained it and dates and other data which defendant complains of as not being contained in the statement. Neither at the trial, nor in the briefs filed by either of the parties in this court, is any issue raised which involved matters omitted from plaintiff's statement. · The statement, so far as the issues regarding this appeal are concerned, consists of a clear and concise statement of the case and gives us a fair understanding of the facts and issues involved. It sets forth, substantially, the second amended petition on which the case was tried and the substance of the answer and reply. It relates the substance and character of the evidence offered at the trial, states that defendant demurred to the evidence, that the court overruled the demurrer and that the trial court, thereupon, directed the jury to render a verdict in plaintiff's favor; that this was done and the judgment rendered in his favor; that defendant filed a motion for a new trial and the

court sustained the same; that thereafter plaintiff, in due time, appealed from that ruling.

We think the statement was sufficient and that the case is not to be ruled by McDonald v. Hawkeye Life Ins. Co., 84 S. W. (2d) 387, but rather by Peterson v. Fleming, 297 S. W. 163, 166; Greenleaf v. Greenleaf, 58 S. W. (2d) 448, 450; Jacobson v. Graham Ship By Truck Co., 61 S. W. (2d) 401; Nowlin v. K. C. Public Service Co., 58 S. W. (2d) 324, 326; Rush v. Hollingsworth, 89 S. W. (2d) 535. The motion to dismiss the appeal is overruled.

### On the Merits of the Appeal.

### Count I.

The disability benefits to which plaintiff claims he is entitled are provided for in Section 77 of the by-laws of the defendant company, which reads as follows:

"Sec. 77 (Old Age Disability). Whenever a beneficiary member shall hold valid his beneficiary certificate until he shall reach the age of seventy years and becomes physically disabled, such member, upon proof of such age and disability, shall be entitled to receive from the beneficiary fund, ten per cent of the amount of his beneficiary certificate annually, while such disability continues, upon the month and day when certificate is dated, until the face of such certificate has been paid, less the amount due the reserve fund, which amount shall be deducted from the first payment. In the event of the death of such member the beneficiary named shall be entitled to the balance due upon such beneficiary certificate."

Under the facts in this case, the sole question determinative of the question of whether or not a *prima facie* case was made on the first count of the petition, is whether or not the provision of Section 77 with respect to "proof of age and disability" is a condition precedent to plaintiff's right to recover. If this provision is a condition precedent to right of recovery, then plaintiff, where, as in this case, no specific time is specified for giving notice, must show that it was given within a reasonable time under all the circumstances, and failure to make such proof would constitute a bar to plaintiff's right of recovery herein. If this provision is a condition precedent, then, assuming, without deciding, that the delay here was not unreasonable as a matter of law, it would in such event, nevertheless, present a question for the jury to pass upon and would thus preclude a directed verdict. If, on the other hand, the provision as to notice is merely a covenant to be performed by plaintiff, delay in its performance would constitute no defense in the absence of evidence tending to show that defendant had thereby been prejudiced in some way in ascertaining the facts pertaining to plaintiff's claim or in making a defense thereto.

The contract before us nowhere specifically provides that the obligation of the assured to give notice is a condition precedent to his

right of recovery. Nor is there any provision in said contract of insurance that a failure to give such notice within a reasonable time (there being no specific time specified for the giving of notice) shall work a forfeiture of the insurance obligation. Absent some such specific provision in a policy of insurance unequivocally indicating an intention to make the giving of notice or proof a condition precedent, the courts of this State have refused to construe such provision as to notice, as a condition precedent to the right of recovery under the policy.

Dezell v. Fidelity & Casualty Co., 176 Mo. 253, 75 S. W. 1102, a decision by our Supreme Court *en banc,* is a leading case on this question and has been frequently cited by the appellate courts of this State in support of this principle. At page 281 of the opinion, the court, after quoting from 13 Am. & Eng. Ency. of Law (2 Ed.), page 329, said:

"Thus it appears that the courts draw a distinction between policies which call for the notice of death and proofs of loss, and stipulate that a failure to give such notice or furnish such proof shall work a forfeiture of the insurance, and policies which call for such notice and proofs but make no stipulation as to the consequence of failure to comply with such call. *And whilst the courts are powerless to strike out the forfeiture feature in those contracts in which the parties have seen fit to insert it, they are equally powerless to insert such a feature when the parties have not seen fit to do so.*" (Italics ours.)

James v. U. S. Casualty Co., 113 Mo. App. 622, 88 S. W. 125, is to the same effect. At page 630 of the opinion, the following language appears:

"The policy contained a provision requiring the assured to give notice to defendant within ten days of the accident. The notice was not given. There was no provision of forfeiture in case notice was not given. There was, however, at another part of the policy, a provision that a claim should not be valid 'unless the provisions and conditions of the contract of insurance are complied with by the insured.' We do not regard this as an express provision that the policy would be forfeited for want of notice. There should be a clear and an express statement for forfeiture before the courts will enforce it. [Dezell v. Casualty Co., 176 Mo. 279-282; 4 Joyce on Ins., sec. 3282.]"

This precise question was before the St. Louis Court of Appeals in the recent case of Walker v. American Automobile Ins. Co., 229 Mo. App. 1202, 70 S. W. (2d) 82. That was a garnishment proceeding based upon a policy of liability insurance. The assured had been sued for personal injuries resulting from the alleged negligent operation of his automobile, and a trial of the case resulted in a judgment for plaintiff against said assured. Insurer (defendant in the garnishment proceeding) denied any liability under the policy on the ground

that the assured had failed to make an immediate report of the accident as he was required to do under the terms of the policy. Said policy contained the following provision: (l. c. 1210).

"Upon the occurrence of any loss or accident and irrespective of whether any injury or damage is apparent at the time, the Assured shall give *immediate* written notice to the Company at its Home Office in St. Louis, Missouri, or to its authorized agent, with the fullest information obtainable at the time: if a claim is made on account of any such accident the Assured shall give like notice thereof *immediately* after such claim is made, with full particulars . . ." (Italics ours.)

The accident there involved occurred on June 16, 1926, and no notice was given to the insurance company until suit was filed in May, 1927. After a detailed examination and discussion of numerous decisions of the appellate courts of this State and of a number of decisions of other jurisdictions, the court there said, l. c. 1217:

"Appellant urges that it is not relying upon a forfeiture, but is relying simply upon a condition precedent, to defeat, not to forfeit, the right of recovery on its policy. It would serve no useful purpose to enter upon a discussion of the refinements distinguishing conditions precedent and conditions subsequent. Obviously the notice provision in this policy is a provision looking to the avoidance of liability, *and it suffices to say that the courts of this State, and elsewhere with a few exceptions, have refused to regard a provision such as this as a condition that defeats recovery or avoids liability for failure to give the notice within the time stipulated, in the absence of any showing of prejudice to the insurer thereby, unless the policy expressly so declares in some appropriate and unambiguous language.* This is made manifest by the cases cited. To this end we have quoted from a number of these cases *in extenso.* (Italics ours.)

"In the present case the policy provides that the insured shall give immediate notice of the accident, but it is not claimed 'that under the terms of the policy any forfeiture or penalty of any kind shall follow failure of the insured to comply with that provision, or that such failure will release the insurer from the duty to defend or from liability.' The policy provides that the insured shall give such notice 'but is silent as to the effect of his failure so to do.' It is not shown or claimed by appellant that the failure of the insured to comply strictly with the notice provision 'prevented it from making any defense it might otherwise have made' to plaintiff's suit against the insured. Nor was it shown that such failure 'disabled or prejudiced appellant in making a defense.' [Cowell v. Employers' Indemnity Corp., *supra.*] There is no express word in the policy releasing the insurer from liability for failure to give immediate notice of the accident 'and we are not authorized to supply one by construction.' [Dezell v. Fidelity & Guaranty Co., *supra.*]"

In St. Paul K. C. S. L. R. R. Co. v. U. S. Fidelity & Guaranty Co., 231 Mo. App. 613, 105 S. W. (2d) 14, this court had under consideration a policy providing "that upon the occurrence of an accident they (the assureds) give, as soon as reasonably possible, notice of such accident with the fullest information obtainable." The accident occurred August 2, 1930. No notice was given to the insurer until February 19, 1932, after suit had been brought. The evidence showed explanations of the delay. Defendant, however, contended that this provision as to notice was in the nature of a condition precedent and that the assureds' failure to comply therewith precluded recovery. We there denied this contention (l. c. 628-629) on the authority of Dezell v. Fidelity & Casualty Co., *supra,* and Walker v. American Ins. Co., *supra,* and a number of other cases there cited to the same effect. [See, also, Malo v. Niagara Ins. Co. of N. Y. (Mo. App.), 282 S. W. 78, l. c. 79; Shaneberg v. National Accident Society (Mo. App.), 263 S. W. 512, l. c. 513; Ash-Grove Lime & Portland Cement Co. v. Southern Surety Co. (Mo. App.), 39 S. W. (2d) 434, l. c. 439-440; Cowell v. Employers' Indemnity Corp., 326 Mo. 1103, 34 S. W. (2d) 705.]

Nor can it be contended that cases such as the Walker case, *supra,* are distinguishable from the case at bar on the ground that such cases involve policies of liability insurance while the case at bar involves a policy of life insurance. In either case, the purpose of notice is the same. This point was so ruled in the Walker case, *supra,* l. c. 1217-1218, where the court quoted approvingly the following language from Hope Spoke Co. v. Maryland Casualty Co., 102 Ark. 1:

" 'It is urged that, in construing a stipulation of that kind in a policy, a distinction should be made between employer's liability insurance and other kinds of insurance. We perceive no reason for such distinction. The purpose of requiring notice is to give the insurer an opportunity to investigate the facts and circumstances affecting the question of its liability and the extent thereof. The reasons for enforcing the requirement, therefore, apply to one class of insurance as well as another.' "

From this it follows that the defense set up in the answer in this case "that plaintiff has never made demand for the benefits claimed in this action or proof of any disability to this defendant Association prior to January, 1935 . . ., and that plaintiff by his conduct in not making claim to the defendant for said alleged disability benefits, if any, within the time prescribed by defendant's laws and within a reasonable time . . . ," could be sustained only upon evidence tending to show that defendant was in some way prejudiced by such delay. [Walker v. American Automobile Ins. Co., *supra,* 1218.] Defendant offered no evidence, and there is no evidence in the case,

tending to show that the defendant was in any way disadvantaged by this delay, and hence this pleaded defense failed.

As to the first count of the petition, plaintiff made a *prima facie* case. Defendant offered no evidence, and there was none, which tended to establish any affirmative defenses pleaded. From this, however, it does not necessarily follow that plaintiff was entitled to a directed verdict.

The proof of age and disability was based upon parol testimony. All the other elements going to make up the *prima facie* case were bottomed upon documentary evidence or admissions in the answer. It is undoubtedly the general rule that uncontradicted testimony does not necessarily take from the jury's determination an issue of fact which it tends to support, for the reason that the party disputing such fact has the right to have the jury pass upon the credibility of the witnesses testifying thereto. [Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 369, 1 S. W. (2d) 99.] But where there is no *actual* dispute of an alleged fact supported by uncontradicted testimony, this rule does not prevail.

While it is true that the answer in this case, which consisted, in part, of a general denial, had the effect of putting in issue the matter of age and disability, nevertheless it is clear from an examination of the record in this case that defendant was relying entirely upon its affirmative defenses, and that there was no actual controversy on these two points. The original policy which was taken out in 1904 recites plaintiff's age as fifty-two. Plaintiff's testimony was very brief. He testified at the trial, which was had in 1936, that he was then eighty-four years of age, and also testified that he was then, and for the past eight or ten years had been, totally disabled. This was the only witness to testify on these two points, and defendant's counsel did not cross-examine. Nothing occurred in the course of the trial to suggest in the slightest measure, that there was any dispute as to plaintiff's age or disability.

In Taylor v. Iron Co., 133 Mo. 349, 365, it was said:

"This court has frequently held, to sustain verdicts rendered upon instructions wherein the trial court has assumed the truth of a proposition or fact which has been established by unquestioned testimony of the party alleging it, and while not admitted by the adverse party in express words has been treated throughout the trial by him as existing, that no reversible error was committed by the court's assumption.

". . . During the entire progress of the trial, the counsel for defendant, by the very manner of the examination of the witnesses, seemed to recognize and concede both the injury and the probable extent thereof, and sought only to avoid its consequences to his clients by endeavoring to show defendant's non-liability by reason of the unmanageable condition of the horse driven by defendant's servant,

at the time plaintiff received her injuries. *What all parties to a litigation treat and assume as a fact during the entire progress of the trial before the court, the court, without error, may assume for convenience in drafting its instructions to the jury, that the issue upon that fact has been withdrawn from the controversy, and confined to the narrow compass embraced within the radius of the testimony offered."* (Italics ours.)

In Davidson v. Transit Co., 211 Mo. 320, 355-361, the court had before it an instruction wherein certain material facts which had been put in issue by a general denial had been assumed as true, for which error was claimed. After reviewing numerous cases involving this question, the court said, l. c. 359:

"It is but the common observation of all courts that counsel ordinarily in no uncertain terms indicate whether there is a real dispute as to certain facts involved in the proceeding, and the dispute, if seriously and really made, will always manifest itself during the progress of the trial in the examination and cross-examination of the witnesses and the instructions requested at the close of all the testimony.

"It is manifest from the record before us in this cause that there was no dispute over the fact that the defendant was a carrier of passengers and that there was a collision, and even though those facts were put in issue by the answer, if it was apparent to the trial judge during the progress of the trial that there was no dispute over those questions and both parties treated those particular facts as being in existence there was no reversible error in the court assuming the existence of such facts in its instructions to the jury."

In distinguishing the case of Gannon v. Gas Light Co., 145 Mo. 502, the court in the Davidson case said, l. c. 360:

"That case clearly falls within that class of cases as heretofore indicated, where a party has a right to challenge the credibility of witnesses and have the question as to their credibility and the truth of the facts to which they give testimony passed upon by the jury, and that such facts were clearly in dispute in that controversy was plainly apparent upon the record. That is not this case. *The examination and cross-examination of the witnesses during the progress of the trial in the case at bar clearly indicates that counsel were not seriously disputing the existence of the facts of which they now complain in this proceeding as being assumed by the court in the instruction now under consideration."* (Italics ours.)

In Avery v. Mechanics Ins. Co. of Philadelphia (Mo. App.), 295 S. W. 509, the defendant, on appeal, urged that although it stood on its demurrer to the evidence, the question of the total destruction of the property insured had been put in issue by its general denial, and that error was committed in assuming as a fact that the property was totally destroyed. In passing upon that question, this court, speaking through BLAND, J., declared, l. c. 514:

"The record shows that this case was defended wholly upon the affirmative defenses set up in the answer. The cross-examination of plaintiff's witnesses and defendant's offered instructions disclose this without a reasonable doubt. No question was asked by defendant of any witness concerning the extent of the loss." [See, also, Lewis v. Terminal Rd. Assn. of St. L., 61 S. W. (2d) 234, 1. c. 236.]

The evidence making up the *prima facie* case in the case at bar presented no question of fact for the jury to determine. We, therefore, hold that the trial court properly directed a verdict for plaintiff on the first count of his petition, and consequently erred in sustaining defendant's motion for a new trial as to said first count.

## COUNT II.

A re-examination of all the briefs filed in connection with the second count of the petition, following our order granting motion for rehearing, leaves us convinced of the correctness of the conclusions reached in our last previous examination of the questions there involved.

Plaintiff bases his right to recover the alleged excess assessments upon the lack of power of the defendant to increase the assessment rates. The pertinent portion of the petition is as follows:

"That as hereinbefore alleged, the certificate of insurance issued by the defendant to the plaintiff constituted a contract binding upon the defendant and the *defendant had no power or authority under its Constitution or By-Laws* as they then existed or under said contract of insurance to pass any subsequent by-laws which had the effect of increasing or requiring plaintiff to pay more than $2.30 per month to keep his contract of insurance in force and good standing. That the defendant has illegally exacted and required plaintiff to pay to it as monthly dues and assessments the sum of $249.15 in excess of the amount which plaintiff under said contract of insurance was legally required to pay. That the defendant unlawfully retained said excess payments, and that plaintiff by reason of the foregoing is entitled to require a repayment thereof from the defendant, and does hereby make demand upon the defendant for the repayment of the same."

Plaintiff, by his petition and reply, conceded the existence of the purported amendments increasing the rates, but limited his challenge of their validity to the asserted *lack of power* upon the part of the defendant to enact the same and to increase and exact the additional rates. It is well-settled that such power exists and should be reasonably exercised when necessary to enable the association to normally function and meet its obligations. Our Supreme Court, in State ex rel. National Council of Knights and Ladies of Security v. Allen et al., 306 Mo. 633, 269 S. W. 388, said:

". . . Under our law (section 6406, R. S. 1919) no domestic fraternal beneficiary society can be incorporated, or foreign society

admitted, unless it does make provision for 'stated periodical contributions sufficient to provide for meeting the mortuary obligations contracted, when valued' in a prescribed way, and (Section 6421, R. S. 1919), the stated payments are not fixed in character; if they fall short of affording the statutory security, they not only may but must be increased. [See Sections 6422, 6423, R. S. 1919.]''

In Constable v. Maccabees, 219 Mo. App. 632, 284 S. W. 515, the St. Louis Court of Appeals held:

''. . . But the power of such a society to reasonably and equitably readjust and increase its assessment rates when this is necessary for the society to maintain its solvency and meet its benefit obligations, and thus fulfill the object and purpose of its existence is universally recognized.''

As to the reasonableness and necessity of the increase, we think the court, in the Constable case, *supra*, correctly ruled as follows:

''. . . the presumption will be indulged that such re-adjustment and increase of the rates was equitable and necessary until the contrary is shown. [Supreme Ruling of Fraternal Mystic Circle v. Ericson (Tex. Civ. App.), 131 S. W. 92, l. c. 95; Case v. Supreme Tribe of Ben Hur, 106 Nebr. 220, l. c. 225.]''

It follows that the court below was right in sustaining the motion for a new trial as to the second count.

The motion in arrest of judgment has served no purpose here or in the court below (St. Louis v. Senter Commission Co., 340 Mo. 633, 102 S. W. (2d) 103; Melenson v. Howell, 130 S. W. (2d) 555), and the order thereon should be vacated and the motion should be stricken from the files.

The judgment sustaining motion for new trial as to the first count is reversed and remanded with directions ot the trial court to reinstate the original judgment in favor of the plaintiff as to said first count, and the judgment sustaining motion for new trial as to the second count is affirmed. All concur.

### ON MOTION FOR REHEARING.

In the foregoing opinion, we stated that ''the sole question determinative of the question of whether or not a *prima facie* case was made on the first count of the petition, is whether or not the provision of Section 77 with respect to 'proof of age and disability' is a condition precedent to plaintiff's right to recover.'' Defendant, in its motion for rehearing, complains that following this statement our ''entire discussion refers to the necessity of furnishing *notice* within a specified time . . .,'' and that the cases we referred to in this connection were liability insurance cases in which notice was required but proof of loss from the insured was not required.

We think our opinion, when read as a whole, is perfectly clear on this point. However, to guard against any possible confusion, we feel it appropriate to make these further observations.

In the foregoing opinion, we set out the substance of a letter of November 12, 1935, notifying defendant of plaintiff's age and of his disability and the date of its commencement. In this letter, plaintiffs, through his attorney, offered to furnish any additional evidence and to execute any proof of claim which defendant might request. So far as the record shows, no request for further information or proof was made.

It is undoubtedly true that mere notice of disability would not constitute "proof" where defendant makes a reasonable request for additional evidence to establish his right to compensation under the terms of the contract of insurance and where plaintiff fails to comply with such request. We think it clear, however, that the notice given in this case, where defendant made no request for further evidence of the facts reported, constituted proof. And if it be contended that the notice should not be regarded as "proof" as provided in Section 77 of defendant's by-laws, then, under the circumstances here, defendant, by its failure to demand something additional, must be held to have waived such proof. [Hablutzel v. Home Life Insurance Company of New York, 52 S. W. (2d) 480, 484.] This being true, it follows that what was said in the opinion with respect to notice applies with equal force, under the circumstances in this case, to *proof* of age and disability.

Defendant, in its motion for rehearing, makes the further contention that the language appearing in Section 77 of the by-laws does not in any event entitle plaintiff to recover any benefits prior to the date of making proof of age and disability. There are cases wherein, by the language of the policy, the date of giving notice or furnishing proof determines the commencement of the period for which disability benefits may be recovered. [Bergholm v. Peoria Life Insurance Co., 284 U. S. 489, 76 L. Ed. 416; Feinberg v. New York Life Insurance Co., 127 S. W. (2d) 82.] On the other hand, where the language of the policy does not declare in unmistakable terms that the insurer will be liable for the payment of disability benefits only for the period following the giving of notice or making of proof thereof, the language of the policy will be construed to mean that the insured, upon furnishing such notice or proof, is entitled to recover such benefits from the date of the commencement of the disability. [Minnesota Mutual Life Insurance Co. v. Marshall, 29 Fed. (2d) 977; Hablutzel v. Home Life Insurance Co., *supra.*]

We think it is clear that the provisions of the insurance contract in the case at bar come within the rule announced in the Hablutzel and Marshall cases, *supra,* and that the plaintiff is entitled to recover benefits from the time his disability began. This court discussed at length the basis of distinction on this point between these two lines of cases, in the case of Feinberg v. New York Life Insurance Co.,

*supra.* A reference to that case obviates any necessity for a repetition of that discussion here.

Defendant contends that on this point the case of Martin v. Illinois Bankers Life Assurance Co., 91 S. W. (2d) 646, is in conflict with our view just expressed. The opinion in the Martin case does not set out the full provision of the policy with respect to any benefit accruing on account of disability, and hence we cannot say whether or not the language in that case was substantially the same as that used in the case at bar. With respect to that provision in the policy, the opinion states:

"A further clause of the policy, which figures somewhat in the issues raised on this appeal, provided that if the insured should become permanently and totally disabled as a result of accident or disease, one-half of the face amount of the policy should be paid 'on due proof thereof' and the remainder should be paid at his death."

Had the provision been quoted in full, it might appear that the language there used brings this case squarely within the rule announced in the Bergholm and Feinberg cases, *supra.* But whether it does or not, the point determined in the Martin case was bottomed upon facts which are distinguishable from the facts in the case at bar.

In the Martin case, the insured claimed that he became disabled as of July 30, 1929, which date was within the period of grace allotted by the company for the payment of his premium. He contended that from the time of said disability "there was due and owing to him one-half of the face amount of his policy under the total and permanent disability benefit provision thereof; and that not only was it the duty of the company to apply, but in legal contemplation it is to be taken as having applied, a sufficient portion of the money thus due the insured towards the payment of his current premium so as to have prevented a forfeiture of the policy for the nonpayment of premium." In passing upon this point, the court said:

"The trouble with plaintiff's position is that he assumes that the disability benefit provided by the policy became payable to the insured upon the accrual of his disability, whereas under the plain terms of the policy it became payable only 'on due proof thereof.' There is no contention that proof of disability was ever furnished the company, and, consequently, the disability provision of the policy never became operative so as to have warranted a finding that the company had money due the insured in its possession to be applied towards the payment of his premium."

It is thus apparent that the court, in the Martin case, was passing upon the question as to *when* the payment provided for in the disability provision would become due— not *how much* would become due. No such point is presented in the instant case. We do not say that the obligation to make payment to plaintiff in the case at

bar arose prior to the time the notice or proof of disability was given. We do say that under the particular terms of this policy, and construing it most favorably to the insured, when the notice or proof was furnished the insurer, it *then* became obligated to pay the prescribed disability benefits from the date of *disability*, rather than from the date of notice or proof as in the Feinberg case. Nothing we have said in this opinion is in conflict with the holding in the Martin case to the effect that the insurer had no money due to the insured in its possession to be applied towards the payment of its premium prior to the furnishing of proof of disability.

We think the other points raised in defendant's motion are sufficiently covered in the principal opinion.

The motion for rehearing and motion to transfer, are, therefore, overruled.

PER CURIAM.