## GRAHAM

v.

## GUARANTEE TRUST LIFE INS. CO.

### No. 21906.

Kansas City Court of Appeals.

Missouri.

May 3, 1954.

E. L. Bartram and M. E. Ford, Maryville, for appellant.

J. Dorr Ewing and Montgomery L. Wilson, Maryville, for respondent.

DEW, Judge.

The plaintiff's amended petition seeks to recover benefits under an insurance policy covering loss of time from disease or illness, and to recover a penalty for vexatious refusal to pay, and for attorneys' fees. The defense was that plaintiff's illness existed before the issuance of the policy, and that the policy was issued upon the plaintiff's false representations as to his condition of health. Defendant denied all grounds of recovery for penalty and attorneys' fees. The verdict and judgment were in plaintiff's favor for $230, plus $23 for vexatious delay, and $500 attorneys' fees, a total of $753 and costs.

Among the allegations of the petition plaintiff averred that by reason of illness and disease commencing after the policy

had been issued, he became totally disabled within the meaning of its terms from and on July 21, 1951 to September 16, 1951, and that he was confined to a hospital from July 21 to August 22, 1951. It is not disputed that the policy was issued, the premiums therefor duly paid, and that the policy was in effect at all times in question. The policy was dated July 14, 1950.

Among the provisions of the policy it was required, in effect, that for the indemnities to be payable thereunder for loss of time due to sickness, the sickness must have originated more than thirty days after the effective date of the policy; that written notice must be given the insurer of any claim for disability from sickness, within twenty days after the commencement of such disability, whereupon the insurer would furnish claimant with forms of proof of loss; that such proof of loss must be filled out and returned to the insurer within ninety days after the termination of the period for which the insurer is liable; that no action could be brought to recover under the policy prior to the expiration of sixty days after proof of loss has been so filed in accordance with requirements of the policy. Additional provisions of the policy contained the stipulation that strict compliance with its provisions was a condition precedent to recovery; that the policy was issued in consideration of the statements and agreements of the insured in his attached application.

The application attached to the policy and filed by the plaintiff was dated July 6, 1950. It stated that the applicant understood that the policy was being issued subject to the representations made by him. Among the questions contained in the application was: "10. Are you sound physically and mentally to the best of your knowledge?" The answer shown was "Yes".

On July 21, 1951, the plaintiff entered the Veterans Hospital at Wadsworth, Kansas. Thereafter, on a date not shown of record, plaintiff sent a card to the defendant, notifying it of his disability. While there he was operated upon for benign prostatic hypertrophy and for varicose veins of the legs.

On August 9, 1951, the plaintiff furnished the defendant with his proof of loss on blanks furnished by defendant. Among the questions contained in the proof of loss and the answers thereto were: "Question No. 4: 'For what illness are you presenting Claim?' Answer: 'Bladder trouble, prostrate operation and varicose veins, both legs.' Question No. 8: 'Do you now have or have you ever had varicose veins, or disease or disorder of urinary tract, generative organs or appendages thereof, stomach, liver, gallbladder, respiratory tract or any other disease?' Answer: 'Get statement from hospital' ".

On September 22, 1951, the defendant wrote to the plaintiff, informing him that it had carefully considered his claim, had reviewed the contents of his file; had noted the diagnosis of his conditions when entering the hospital and that the investigation had revealed that he had been suffering manifestations of prostate trouble since 1937; that the investigation also showed that he had had extensive varicosities for many years; that the conditions from which he was hospitalized had existed and were manifest to the plaintiff several years before the hospitalization and surgical intervention became necessary in July, 1951. The letter stated that defendant was not liable for the claim and denied the same.

While there was some evidence on the part of the plaintiff that he had suffered in 1943 and several years thereafter from various physical ailments, he testified that as far as he knew he was sound physically and mentally on July 6, 1950. His physician in charge testified that he had no reason to think that the plaintiff on July 6, 1950 had any prostate enlargement. He also testified that in his opinion the operation for varicose veins was made only incidental to the plaintiff's surgical treatments and did not in anywise affect the duration of his disability.

The defendant introduced records which showed the plaintiff's application of July 20, 1951, for pension for disability not resulting from active military service. Among other things the application recited

that he was making claim for a severe cough since 1937, dysentery and stomach trouble since that date, prostate trouble since 1944, and varicose veins since 1930. The application further stated that he had been confined to his bed on account of illness from dysentery and kidney infection in July, August and November, 1950, and March, 1951, to date of the application, to wit: July 19, 1951. In rebuttal, the plaintiff testified that the date of 1930 in the application for pension, regarding varicose veins, was inserted by the scrivener by mistake, and should have been 1950, according to his statement made when the application was prepared.

It was stated by the defendant's counsel at the trial and in its brief that on September 22, 1951, the date of its rejection of the claim, the defendant then had full access to the records of the hospital, and that statement was not denied by the plaintiff. After the suit was brought and on October 2, 1952, counsel for plaintiff telegraphed to the hospital as follows: "Authority to disclose or give any information to Guarantee Trust Life Insurance Company regarding Charley Y. Graham is hereby withdrawn". On the same date the same counsel wrote to the Manager of the Veterans Administration Facility at Wadsworth, Kansas, notifying him that the defendant intended to take depositions in this case at Wadsworth, Kansas on October 6, 1952, and would probably seek information as to the plaintiff's case while there confined. The letter confirmed the telegram to the effect that any previous authority to disclose such information theretofore given had been withdrawn, and requested immediate action to prevent any disclosure of such information. A copy of the letter was also sent to the Chief Attorney of the Veterans Administration at Kansas City, Missouri.

It is the contention of the defendant that a proof of loss was a condition precedent to this action for the purpose of enabling the defendant to determine its liability; that the plaintiff's proof of loss referred defendant to the hospital records for information requested, thereby giving it permission to examine the records; that having waived the privileged character of the information, the waiver could not be recalled; that the attempted withdrawal of the waiver had the effect of withdrawal of the entire proof of loss, without which no action accrued under the policy; that to withdraw the waiver of the privilege as to confidential communications after the insurer has acted upon the same would constitute fraud. It is further argued that under the circumstances shown there were clearly no grounds for the assessment of damages for vexatious refusal to pay or for attorneys' fees.

█ It is true that under the terms of the policy a proof of loss was a condition precedent to recovery of benefits under it, and that such proof was required on forms to be supplied by the insurer. We cannot say that *no* proof of loss was furnished by plaintiff because he therein referred defendant to certain hospital records as to one of the interrogatories. It is true the permission to examine them was later withdrawn. Defendant, in effect, admitted it obtained the information revealed by the records, asserted that fact in its letter of rejection; relied thereon in denying the claim, and that the hospital records were introduced at the trial by plaintiff.

██ The more serious issue here made is the right by plaintiff to recover penalty for vexatious refusal to pay and for attorneys' fees under the record. One of the purposes of a proof of loss under an insurance policy is to enable the insurer to determine its liability. 29 Am.Jur. page 824, Section 1100. The information called for in the proof of loss, for which plaintiff in the case at bar referred defendant to the hospital records, was material to the liability of the defendant for the claim made. The effect of the reference "Get statement from hospital", was a waiver of plaintiff's privilege to withhold confidential matter disclosed by the hospital records, and was a consent for the defendant's use of them. Such a waiver can be withdrawn, but not after it has been acted upon. 70 C.J. page 472, Section 640; National Life & Accident Insurance Co. v. Bell, 144 Okl. 236, 291 P.

106. After defendant had examined the hospital records, as disclosed by its letter of rejection introduced by the plaintiff, and when about a month before trial defendant sought depositions at the hospital to preserve the evidence there available, the plaintiff notified the hospital to keep the information confidential.

■ Considering the nature of the facts revealed by the hospital records, it was not vexatious for the defendant to reject the claim and to require submission to the jury of the issue whether the illness for which the plaintiff was making claim existed at the date of the policy. The clinical records did show that plaintiff had extensive varicosity for many years which had "been causing symptoms in the past year or so, main symptoms being easy fatigability of his lower extremity". Also his application for pension stated "varicose veins 1930", and "prostate trouble 1944". This court has said in Patterson v. American Insurance Co., 174 Mo.App. 37, 44, 160 S.W. 59, 62: "And while affirmative proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless the evidence and circumstances show that such refusal was willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention is no reason for inflicting the penalty. Blackwell v. [American Central] Ins. Co., 80 Mo.App. 75". See, also, Non-Royalty Shoe Co. v. Phoenix Assurance Co. Ltd., 277 Mo. 399, 210 S.W. 37. We hold, as a matter of law, that the evidence in the case at bar was not sufficient to authorize the submission to the jury of the issue whether defendant's refusal to pay was willful and without reasonable cause and as the facts would appear to a reasonable and prudent person before trial. It was error to submit to the jury the issue of damages for vexatious refusal to pay and for attorneys' fees.

■ As to the recovery of the monthly benefits covered by the claim, the plaintiff's attending physician testified that he was not able to find any reason for thinking that the plaintiff had any prostate enlargement on July 6, 1950, the date of the policy. He said the removal of the varicose veins was incidental to the main operation for prostate enlargement and did not extend the period of liability. Plaintiff himself said that so far as he knew he was mentally and physically sound on July 6, 1950; that the statement in his application for pension that he had been troubled with varicose veins since 1930 was a mistake of the person preparing it. The evidence was sufficient to submit to the jury the right of the plaintiff to recover the monthly indemnity then claimed.

■ Lastly, the defendant contends that the court erred in not sustaining its motion to dismiss plaintiff's case at the close of plaintiff's evidence. This point was waived by the defendant by having introduced testimony on the merits of the case after the adverse ruling. Ellis v. Kansas City Public Service Co., Mo.App., 203 S.W. 2d 475, 481.

The judgment is reversed and the cause remanded with directions to enter judgment for the plaintiff for $230 and costs. All concur.