Ruth L. Bloom KAPLAN, Plaintiff,

v.

The GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,
Defendant.

Civ. A. No. 12634–4.

United States District Court
W. D. Missouri, W. D.

June 30, 1964.

Koenigsdorf, Kaplan, Kraft & Koenigsdorf, by Chester B. Kaplan, Raymond, West & Cochrane, by Walter A. Raymond, Kansas City, Mo., for plaintiff.

Morrison, Hecker, Cozad & Morrison, by William H. Curtis, James C. Mordy, George Wells, Kansas City, Mo., for defendant.

BECKER, District Judge.

This is a removed action for accidental death benefits by Ruth L. Bloom Kaplan, a resident of the State of Missouri, against The Guardian Life Insurance Company of America, a New York corporation, upon three insurance policies on the life of Irving C. Bloom, plaintiff's deceased husband. The principal indemnity for death Policy No. 982512 is $30,000.00; under Policies No. 818207 and No. 828724 the principal indemnity for death is $5,000.00 each. Each policy contains a provision for "double indemnity" in the event of accidental death. Policy No. 982512 provides:

"If the Policy shall become a claim by the death of the Insured, while the Policy and this Supplemental Agreement are in full force and effect and before the endowment maturity date if the Policy is on the endowment plan, and due proof shall be furnished to the Company at its Home Office that such death resulted directly and independently of all other causes from accidental bodily injury, of which (except in the case of accidental drowning or of internal injury revealed by an autopsy) there is as evidence a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days from the date of such bodily injury, then the Company agrees to pay the sum of * * * THIRTY THOUSAND * * * Dollars in addition to any amount otherwise payable under the Policy."

Policies No. 818207 and No. 828724 provide as follows:

"If said policy shall become a claim by the death of the Insured while said policy and this supplemental agreement are in full force and effect and before the Insured shall have attained the age of sixty-five years and before the end of the endowment period if said policy is on the endowment plan, and due proof shall be furnished to the Company at its Home Office that such death resulted directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means, of which (except in the case of accidental drowning or of internal injuries revealed by an autopsy) there is as evidence a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days from the date of such bodily injuries, then the Company agrees to pay the sum

of * * * FIVE THOUSAND * * * Dollars in addition to any amount otherwise payable under said policy."

This action is limited to the "double indemnity" for accidental death provisions of the policies since defendant has paid the amount of the principal indemnity on each of said policies.

Plaintiff alleges

"That on the 21st day of October, 1957, the insured on said policies, Irving C. Bloom, came to his death as a result of injuries suffered that day at a time when said policies and the double indemnity supplement thereto were in full force and effect and when he was only forty-three (43) years of age as a result of bodily injuries effected solely through external, violent and accidental means of which there was as evidence visible contusions or wounds on the exterior of his body,"

and further

"That timely notice and due proof of the death of said insured under the circumstances aforesaid was furnished the defendant at its said home office and plaintiffs have done each and every thing required of them to be done to entitle them to payment of double indemnity under the terms and provisions of said policies and each of them."

Defendant denies these allegations and affirmatively states "that due proof, as required by the terms, conditions and provisions of the supplemental agreements for double indemnity in said policies, has not been furnished to defendant."

The cause was tried before the Court without a jury. The parties have filed memorandum trial briefs; plaintiff has filed a memorandum reply brief, and the defendant has responded thereto.

In the original petition filed in the Circuit Court of Jackson County at Kansas City, plaintiff alleged that she was the beneficiary named in each of the said policies. Evidence introduced at the trial showed that Star Leather Company (now Star Shoe Company), decedent's employer, was the named beneficiary in Policy No. 982512.

By reason of certain purported assignments, the identity of the real party or parties in interest in any further proceeds of said policy is in doubt.

■ After issuance of the policy (Policy No. 982512) designating the Star Leather Company as beneficiary, Star Leather Company on December 24, 1955 formally assigned all rights under the policy as collateral to Mervyn Bloom, Jack Grupp, Bertha Kubish, Jack Kubish, Dorothy Kessell and the plaintiff, Ruth Bloom Kaplan (then Ruth Bloom), as tenants in common to secure one or more loans to Star Shoe Company (then Star Leather Company). (P. Ex. 15.) Assignees' statements (P. Ex. 14a–14f) dated February 19, 1958, indicate that on that date all the assignees except Jack Kubish were entitled to moneys therefrom. In this state of the record, the assignees other than plaintiff, Ruth Bloom Kaplan, may have an interest in the policy and are necessary parties. F.R.Civ.P. 19. The denial of the motion of Star Shoe Company to intervene for this reason results in an adjudication that, in respect to Policy No. 982512, necessary parties are not joined. Therefore the findings and conclusions of the memorandum are without prejudice to any claims under Policy No. 982512.

The motion to intervene is also denied on the ground that it is not timely filed. On May 16, 1963, Star Shoe Company filed a motion for leave to enter an appearance as an additional party plaintiff, claiming an interest in any further proceeds on Policy No. 982512 as "trustee for the plaintiff." Ruling on this motion was deferred. The motion is now ready for ruling.

■■ An application for permission to intervene, whether made as a matter of legal right or as a matter of discretion, must be timely. Whether intervention is timely is a matter committed to the sound discretion of the court in

light of all the circumstances of the cause. 2 Barron and Holtzoff, Federal Practice and Procedure § 594, pp. 364–71; 4 Moore, Federal Practice ¶ 24.13, pp. 97–100.

■ Irving C. Bloom, the insured under the policies upon which this suit is brought, died October 1, 1957. A petition for damages was originally filed in the Circuit Court of Jackson County, Missouri, at Kansas City, on November 18, 1959. The petition for removal was filed December 8, 1959. The application for leave to intervene was filed May 16, 1963, some three and one-half years after suit was originally filed and during the course of trial. One of the counsel for the plaintiff in this action is, and has been for several years, counsel for the would-be intervenor. No showing of excusable neglect in failing to join the Star Shoe Company as plaintiff has been made. The defendant claims entry of an additional party at this time would be prejudicial to it. The Court is therefore of the opinion that the motion to intervene should be denied as untimely for many reasons, including the denial to defendant of pre-trial discovery from Star Shoe Company, which would result if it were now added as a party plaintiff.

### FINDINGS OF FACT

1. That Irving C. Bloom, husband of Ruth L. Bloom Kaplan and the insured under the policies here in issue, died on October 21, 1957, at the age of forty-three, from a coronary occlusion of the left coronary artery, leading to myocardial infarction and caused by a sub-intimal hemorrhage.

2. That on the morning of October 21, 1957, Irving C. Bloom did accidentally pull down upon himself a stack of boxed shoes from a shelf.

3. That as a result of the pulling down of the stacked shoes, Irving C. Bloom suffered no "visible contusion or wound on the exterior of the body." The autopsy failed to reveal the alleged wound on the scalp. (D. Ex. A.) On this crucial issue the evidence preponderates in favor of the defendant.

4. That the said occurrence of the morning of October 21, 1957, was a direct and independent cause of the sub-intimal hemorrhage which resulted in the death of Irving C. Bloom, operating in the presence of pre-existing arteriosclerotic heart disease.

5. That the said sub-intimal hemorrhage was an internal injury within the meaning of the policy.

6. That said sub-intimal hemorrhage was not "revealed by an autopsy" within the meaning of the policy. (The "Autopsy Report" listed diagnosis as "Coronary thrombosis; Arteriosclerotic heart disease.") (D. Ex. A.)

7. That proofs of loss under each of the policies in issue dated February 19, 1958, were mailed to, and received by, the defendant at its home office sometime in the last two weeks of February, 1958.

8. That said proofs of loss simply listed the cause of Irving C. Bloom's death as "Coronary thrombosis as a result of trauma," but did not explicitly state that the death was accidental and did not mention the double indemnity provisions of the policies or any claim thereunder.

9. That on February 28, 1958, defendant, through Edward K. Kane, Claim Approver, wrote plaintiff's counsel as follows:

"We note that on the claimant's statement the cause of death is listed as 'Coronary Thrombosis as a result of trauma.' If it is your contention that the insured died as a result of an accidental death as required by the provisions of the policy contracts, it will be necessary to submit due proof of such an accidental death as soon as possible. We have no standard froms [sic] for such proof since the circumstances of accidental deaths vary to such an extent. However, we will be glad to review whatever evidence is submitted."

10. That plaintiff's attorney received this letter but neither plaintiff nor her attorney ever responded to it.

11. That on April 28, 1958, defendant through Edward K. Kane, Claim Approver, wrote plaintiff's counsel as follows:

"The claim for the single indemnity portion of the proceeds of Policy 982512 has been approved.

\* \* \* \* \* \*

"We have given the claim for the accidental death benefit our careful consideration.

"The death certificate submitted as part of the proofs of death indicates the cause of the Insured's death as coronary thrombosis due to arteriosclerotic heart disease. The Claimant's Statement submitted states the cause of death as coronary thrombosis as a result of trauma.

"We do not feel that this evidence establishes an accidental death within the meaning of the terms of the provisions of the policy contracts. Under the circumstances, we must deny the claim for the accidental death benefit provided for by the policies."

12. That defendant did not waive presentment of due proof of accidental death. No acts of commission or omission occurred which could be the basis of waiver of such due proof, or of estoppel of defendant to require such due proof.

## CONCLUSIONS OF LAW

The purpose of a provision for notice and proofs of loss is to allow the insurer to form an intelligent estimate of its rights and liabilities; to afford it an opportunity for investigation; and to prevent fraud and imposition upon it. Graham v. Guarantee Trust Life Ins. Co. (Mo.App.) 267 S.W.2d 692, Feinberg v. New York Life Ins. Co. (Mo.App.) 127 S.W.2d 82; Annot., 170 A.L.R. 1262, l. c. 1264 and cases therein cited.

While no particular form of proof of loss is required in the absence of specific policy provisions, the proof must be adequate to bring the attention of the insurer to the loss or the accident, must set forth the essential facts upon which the liability of the insurer depends, and must appear credible. Hablutzel v. Home Life Ins. Co. (Mo.App.) 52 S.W.2d 481, l. c. 483–84; Sanderson v. New York Life Ins. Co. (Mo.App.) 194 S.W.2d 221; 3 Appleman, Insurance Law and Practice § 1444, pp. 64–65. Mere notice of a claim for benefits under the policy provisions is not due proof unless the insurer so construes and accepts it. Jacoby v. New York Life Ins. Co. (Mo.App.) 77 S.W.2d 841, l. c. 845.

In the absence of any provision in the policy specifying the time for presenting to the company the proofs of loss, the law requires that such proofs must be made within a reasonable time. Jackson v. Security Ben. Ass'n (Mo. App.) 139 S.W.2d 1014, l. c. 1018; 29A Am.Jur. Insurance § 1378, p. 494 and cases cited in note 13.

In this cause proofs of death sufficient to comply with the requirements of the basic insurance policies. were prepared, mailed to and received by the defendant. These proofs of death were on defendant's "Proofs of Death" forms and were dated February 19, 1958. These proofs of death were insufficient to constitute due proof of accidental death under the double indemnity provisions of the policies. They did not expressly claim benefits under the double indemnity provisions of the policy, did not state that the insured's death was accidental and did not set forth the essential facts upon which the liability of the insurer depended.

The insurer did not construe or accept. these proofs of death as due proof under the double indemnity provisions of the policy, but requested additional proof of accidental death. This request was made by a letter dated April 28, 1958, from Edward K. Kane, Claim Approver for defendant, to plaintiff's attorney. No additional proof was forthcoming and the letter was never answered.

Even if the plaintiff's petition for damages filed in the Circuit Court of Jackson County, Missouri, on Novem-

ber 18, 1959, were to be considered a submission of proof or additional proof, the allegations therein relating to accidental death were mere conclusions, and did not set forth the factual circumstances and therefore were insufficient to satisfy the requirements of due proof.

 Thus for at least one year and nine months following the death of Irving C. Bloom the defendant insurer was not furnished with "due proof" of accidental death, nor, in fact, was an unequivocal claim for benefits under the double indemnity provisions of the policy made within this time. Although requested to assert any claim for accidental death benefits, plaintiff remained silent from April 28, 1958, until this suit was filed on November 18, 1959.

In an attempt to avoid the effect of failure to give due proof, plaintiff has requested the Court to find that

> "Three or four weeks after the death of insured plaintiffs furnished the New York Life Insurance Company proofs of insured's death by accidental means, supported by the affidavit of Benjamin Apple describing the accident which was the basis of the claim. Defendant obtained a copy of that affidavit." (Plaintiff's Requested Finding of Fact No. 11.)

Assuming without so deciding that said affidavit was furnished to the New York Life Insurance Company at the time stated and further that it constituted due proof of accidental death within the meaning of the policies in issue, there is nothing in the record in this cause to support a finding that this affidavit was either furnished to or obtained by the defendant herein until after commencement of this cause.

Under all the circumstances of this cause, it is concluded that plaintiff (though requested by defendant to do so) failed to furnish due proof of accidental death within the meaning of the double indemnity provisions of the policy within a reasonable time; that such failure resulted in substantial prejudice to the defendant insurer, since by plaintiff's failure to give timely proof of the facts now claimed to exist, the defendant has been deprived of any opportunity to make an adequate and timely investigation to test the accuracy of the claim before suit and while the memories of the witnesses were fresh.

 It is further concluded that the "due proof" requirements of the policies in issue were not waived by defendant, and that defendant is not for any reason estopped to raise failure to submit said proof as a defense. On this issue the burden of proof was on the plaintiff. Hayes v. Equitable Life Assur. Soc. (Mo. App.) 150 S.W.2d 1113, l. c. 1118; Lambert v. Travelers Fire Ins. Co. (C. A.5) 274 F.2d 685; Neidhoefer v. Automobile Ins. Co. (C.A.7) 182 F.2d 269; 21 Appleman, Insurance Law and Practice § 12091, p. 7.

It is true that the policies in question contain no specific provisions expressly making submission of due proof a condition precedent to recovery under the policies. See, e. g., Jackson v. Security Ben. Ass'n (Mo.App.) 139 S.W.2d 1014, l. c. 1018; but see Feinberg v. New York Life Ins. Co. (Mo.App.) 127 S.W. 2d 82, l. c. 88, and cases therein cited, especially Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416; Porter v. Equitable Life Assur. Soc. (Mo.App.) 71 S.W.2d 766, l. c. 773. Nor do the policies contain any express provision for forfeiture upon failure to provide due proof. However the policies do state *"If * * * due proof shall be furnished * * * then the Company agrees to pay * * *."* (Emphasis added.)

The Missouri rule on the effect of failure to furnish due proof under a policy of this type is found in the leading case of Dezell v. Fidelity & Cas. Co. (Mo. Sup.) 75 S.W. 1102, involving accident insurance. In that case the Missouri Supreme Court said, at page 1119:

> "Thus it appears that the courts draw a distinction between policies which call for the notice of death and proofs of loss, and stipulate that a

failure to give such notice or furnish such proof shall work a forfeiture of the insurance, and policies which call for such notice and proofs, but make no stipulation as to the consequence of failure to comply with such call; and, whilst the courts are powerless to strike out the forfeiture feature in those contracts in which the parties have seen fit to insert it, they are equally powerless to insert such a feature when the parties have not seen fit to do so. *Where no forfeiture is prescribed in the contract, the court should have regard to the consequence that results from the failure to give the notice as shown by the facts in the case, and, if it appears that the purpose for which the notice and proofs were required has really been accomplished, the plaintiffs should not be precluded.* In the first Nebraska case above referred to [Omaha Fire Ins. Co. v. Dierks, 43 Neb. 473, 61 N.W. 740] that court with reason and justice said that the failure of the plaintiff to give the notice was immaterial, 'since it appears that the company had actual knowledge of the loss through its agents and acted on that knowledge.' * * * *In the case at bar the defendant by its answer shows that the purpose for which the notice was required has been accomplished,* and, as it was not stipulated in the contract that a forfeiture should result from a failure to give the notice, the failure in that respect was immaterial, and it furnishes no defense to the plaintiff's suit." (Emphasis added.)

In Walker to Use of Foristel v. American Automobile Ins. Co. (Mo.App.) 70 S.W.2d 82, a garnishment proceeding based on a liability insurance policy, the Court, speaking on an analogous question, said at pages 88–89:

"In the present case the policy provides that the insured shall give immediate notice of the accident, but it is not claimed 'that under the terms of the policy any forfeiture or penalty of any kind shall follow failure of the insured to comply with that provision, or that such failure will release the insurer from the duty to defend or from liability.' The policy provides that the insured shall give such notice, 'but is silent as to the effect of his failure so to do.' *It is not shown or claimed by appellant that the failure of the insured to comply strictly with the notice provision 'prevented it from making any defense it might otherwise have made' to plaintiff's suit against the insured. Nor was it shown that such failure 'disabled or prejudiced appellant in making a defense.'* Cowell v. Employers' Indemnity Corp., supra. [326 Mo. 1103, 34 S.W.2d 705.]

\* \* \* \* \* \*

*"As already said, it is not shown or claimed in this case that the insurer suffered any loss or injury by reason of not having received an earlier notice of the accident. * * * In this state of the record we are unwilling to hold that the insurer is entitled to defeat recovery for the liability incurred by the insured and clearly covered by the policy, on account of the delay shown in giving notice of the accident."* (Emphasis added.)

In Jackson v. Security Ben. Ass'n (Mo. App.) 139 S.W.2d 1014, an action on a disability insurance policy, the Court, speaking of the effect of failure to give proof, said, at page 1020:

"From this it follows that the defense set up in the answer in this case 'that plaintiff has never made demand for the benefits claimed in this action or proof of any disability to this defendant Association prior to January, 1935 * * *, and that plaintiff by his conduct in not making claim to the defendant for said alleged disability benefits, if any, within the time prescribed by defendant's laws and within a reason-

able time * * *', *could be sustained only upon evidence tending to show that defendant was in some way prejudiced by such delay.* * * Defendant offered no evidence, and there is no evidence in the case, tending to show that the defendant was in any way disadvantaged by this delay, and hence this pleaded defense failed."

On the failure to give proof, in Western Casualty & Surety Co. v. Coleman (C.A.8) 186 F.2d 40, l. c. 44, an action involving automobile liability insurance, the Court stated:

"The Missouri cases cited have established the rule that failure of an insured to give notice of an accident will not defeat his rights under a liability policy unless it contains a provision for a forfeiture in that event or *unless the insurer proves that the failure resulted in prejudice to it.*

"In the instant case there was no forfeiture provision in the policy. No prejudice was charged or proven, and the stipulation of facts negatives prejudice." (Emphasis added.)

The case of Hawkeye-Security Ins. Co. v. Davis (C.A.8) 277 F.2d 765, is to the same effect.

The cases of Spillman v. Kansas City Life Ins. Co. (Mo.App.) 180 S.W.2d 605, and Schell v. Metropolitan Life Ins. Co. (Mo.App.) 3 S.W.2d 269, cited by the plaintiff, are not in point since in both of those cases the Court specifically found from the record that sufficient proofs of loss were in fact furnished to the insurer.

The plaintiff's unexplained failure to give due proof of accidental death under the double indemnity provisions of the policies in question constitutes defense to this action under applicable Missouri law in light of the prejudice which has been found to have resulted to the defendant insurer.

Furthermore plaintiff is not entitled to recover for the reason that Irving C. Bloom suffered no "visible contusion or wound on the exterior of the body" nor did he die from an "internal injury revealed by autopsy."

The "Autopsy Report" on file herein listed diagnosis as "Coronary thrombosis; Arteriosclerotic heart disease." (No visible wound or contusion was disclosed thereby.) It is true that, under the findings hereinbefore made, Irving C. Bloom died as a result of a sub-intimal hemorrhage which resulted in coronary thrombosis. It is also true that while the autopsy did reveal the thrombosis, the autopsy did not reveal the sub-intimal hemorrhage, the "internal injury" which was the direct cause of his death. It is immaterial that the Court has found that the sub-intimal hemorrhage, the "internal injury," was present when the autopsy was made because that injury was not found by the coroner. At the trial it was necessary to prove the existence of the sub-intimal hemorrhage by a medical expert answering a hypothetical question.

As stated in Fidelity Mut. Life Ins. Co. v. Powell (C.A.4) 74 F.2d 525, l. c. 526–27:

"Since there was no evidence tending to show that the injury causing the death of insured, carbon monoxide asphyxiation, was evidenced by any visible contusion or wound on the exterior of the body, it is manifest that plaintiff cannot recover on the policy unless she can bring herself within the exception embodied in the parenthesis, i. e., unless she can show a case of drowning 'or of internal injuries revealed by an autopsy.' It is perfectly clear that she has shown neither. We can take judicial notice of the fact that carbon monoxide asphyxiation results in internal injuries, and that such internal injuries are revealable by autopsy; but in the case of this insured they were not 'revealed by an autopsy.' This is what is required, in language as plain as any of which our English speech is capable, to take the case out of the re-

quirement of proof of a visible wound or contusion on the exterior of the body. The learned counsel for appellee in their supplemental brief have suggested that the language should be construed to mean 'disputed internal injuries revealed by autopsy'; but it would be necessary to interpolate even more than this and to construe the exception as though it read 'internal injuries which, if they are disputed, shall be revealed by an autopsy.' To give the language either of the suggested interpretations, however, would be to make a different contract for the parties in the light of what we think they ought to have meant, not to construe the perfectly clear language that they have used.

"It will not do to say that proof of internal injuries revealed by autopsy is dispensed with because of the admission on trial that death resulted from internal injuries. To do so is simply to read the words 'revealed by an autopsy' out of the policy; and we have no power to thus modify contracts which parties have made. There is sound reason for the requirement that internal injuries, to constitute ground of recovery, shall be revealed by autopsy. In case of injuries of which there is a visible wound or contusion on the exterior of the body, or in case of drowning, the cause of death is readily apparent; but in case of internal injuries it is largely a matter of opinion. As said in the Encyclopedia Brittanica (14th Ed.) vol. 2, p. 790: 'In the absence of autopsy a diagnosis of the cause of death is in large measure an opinion as distinguished from a fact. Even a physician of the highest skill often finds in the post mortem room that his diagnosis of the patient's disease during life needs rectification.' Such a requirement is a safeguard against fraud and mistake; and, where the parties have thus provided that the policy shall cover accidental death from internal injuries revealed only in this particular way, it does not cover death resulting from internal injuries not so revealed, no matter how indisputably established. The question is not merely one of proof, but of policy coverage; and the coverage is certainly not extended by an admission that death resulted from a cause which the policy did not cover."

It should also be noted that the policy reads "internal injury revealed by an autopsy" not "internal injury, evidence of which is revealed by autopsy."

The requirement of the policy that there be due proof of death resulting from accidental bodily injury of which there is as evidence a visible wound or contusion on the exterior of the body (except in case of accidental drowning or of internal injury revealed by autopsy) is a valid provision intended to exclude claims such as that involved here.

The foregoing conclusions have been reached under the principles of the last controlling decision of the Supreme Court of Missouri (en banc), State Farm Mut. Auto. Ins. Co. v. Underwood, 377 S.W.2d 459, which reaffirmed Gennari v. Prudential Ins. Co. of America (Mo. Sup.) 335 S.W.2d 55.

It is therefore

Ordered that the motion of Star Shoe Company for leave to intervene be, and the same is hereby, overruled. It is further

Ordered and adjudged that, in respect of policies numbered 818207 and 828724, the plaintiff take nothing of and from the defendant, and that the defendant go hence without day. It is further

Ordered and adjudged that defendant have and recover its costs herein expended. It is further

Ordered and adjudged that the claim for relief in respect of policy No. 982512 issued by defendant be, and it is hereby, dismissed without prejudice.